GRANVIL PEAGLER, EMPLOYEE-PLAINTIFF v. TYSON FOODS, INC., SELF INSURED, SELF ADMINISTERED, EMPLOYER-DEFENDANT

No. COA99-618

(Filed 5 July 2000)

## 1. Workers' Compensation— causation—work-related accident

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff established his condition was caused by a work-related incident because: (1) a doctor testified that the 28 April 1993 incident at work could have produced plaintiff's disc injury, and all that is necessary is that an expert express an opinion that a particular cause was capable of producing the injurious result; and (2) the doctor's testimony is corroborated by other testimony, including plaintiff's testimony that he had never had any problems with his back or neck before the night of 28 April 1993 and his onset of pain was simultaneous with the incident.

**2. Workers' Compensation— temporary total disability— diminished earning capacity—unable to perform work of any kind**

The Industrial Commission did not err in a workers' compensation case by awarding plaintiff-employee temporary total disability based on its conclusion that plaintiff was unable to perform work of any kind because: (1) at the time of injury to his back and neck, plaintiff was fifty-six years old, educated only through the third grade level and illiterate, and suffered from diabetes; and (2) defendant-employer did not provide plaintiff with any vocational counseling or rehabilitation services.

**3. Workers' Compensation— witness credibility—determination by full Commission**

The Industrial Commission did not fail to make sufficient findings of fact regarding the testimony of defendant-employer's witnesses in a workers' compensation case regarding plaintiff's failure to report the work-related injury and his wife's statement to one witness that the injury may have been caused by plaintiff's work at home, because: (1) there is no showing the Commission ignored the testimony of defendant's witnesses; (2) the findings of fact show the Commission realized that plaintiff did not initially report his work-related injury to his co-workers or to the benefits department; (3) the Commission's opinion and award reveals that it accepted the injury was caused by plaintiff's work-related incident and thereby rejected contrary testimony offered by one witness that the injury may have been caused by his repair work at home; and (4) the Commission considered all of the evidence before it, and it was not required to make an express finding that it did so.

**4. Workers' Compensation— notice of accident—failure to give timely written notice—reasonable excuse—no prejudice**

The Industrial Commission did not err in a workers' compensation case by concluding that plaintiff's failure to give timely written notice of the accident was reasonable, and in concluding that defendant-employer was not prejudiced by the delay, because: (1) a reasonable excuse may be established where the employee does not initially know of the nature or probable compensable character of his injury, and the evidence indicated plaintiff did not initially understand the nature or character of his injury; (2) plaintiff relied on his wife to communicate with his

PEAGLER v. TYSON FOODS, INC.

[138 N.C. App. 593 (2000)]

employer while he was undergoing medical treatment, and defendant's benefits employees gave the wife disability forms without asking her whether her husband had experienced a work-related injury or whether this was a workers' compensation claim; and (3) defendant-employer did not meet its burden to present evidence to show how it was prejudiced by the delay. N.C.G.S. § 97-22.

**5. Workers' Compensation— disability payments—employer's entitlement to a credit**

The Industrial Commission erred in a workers' compensation case by concluding that defendant-employer was not entitled to a credit for disability payments to plaintiff-employee under N.C.G.S. § 97-42, because: (1) plaintiff received $2,506 in disability compensation; (2) the disability compensation plan was entirely funded by the employer; and (3) the evidence does not indicate the employee contributed to this disability plan.

Appeal by defendant from opinion and award of the full North Carolina Industrial Commission filed 7 January 1998. Heard in the Court of Appeals 27 March 2000.

*James S. Weidner, Jr. for plaintiff-appellee.*

*Orbock Bowden Ruark & Dillard, PC, by Maureen Tierney Orbock, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Tyson Foods, Inc. appeals from an order of the Industrial Commission awarding the plaintiff workers' compensation benefits for a work-related injury which occurred on 28 April 1993.

Evidence before the Commission included the following: Plaintiff Granvil Peagler began working for Defendant Tyson Foods in 1985. Mr. Peagler had dropped out of school after the third grade and was illiterate. At Tyson Foods, Mr. Peagler's job entailed washing out eighteen wheeler refrigeration trucks, checking the tire pressure and fuel level, and moving the trucks as needed. On 28 April 1993, plaintiff, age fifty six, was working during his shift when he had difficulty closing one of the rear doors on a refrigeration truck. Plaintiff stood on the bumper of the truck and struck the lock on the trailer door with his left hand, which immediately caused pain in his arm. Plaintiff went to the employer's medical department and bought two Tylenol

tablets for the pain. The next morning, while at work, plaintiff experienced pain in his arm, shoulder, and chest. Plaintiff went to the medical department and told the personnel on duty that he needed to go see his doctor. He then left work to visit his family doctor, Dr. Willis.

Over the next few days, plaintiff was examined by several different physicians. The doctors initially thought that plaintiff might have had a heart attack. However, after an MRI on 4 May 1993, the doctors concluded that plaintiff suffered from a herniated disc. The test indicated that plaintiff had "cervical osteophytic spurring, mild disc stenosis, . . . a disc herniation at the C4-5 level, . . . and disc protrusions/herniations noted at the C3-4, C5-6 and C6-7 levels." On 24 May 1993, Dr. Darden, an orthopedic surgeon, operated on plaintiff for "a microscopic anterior cervical discotomy and fusion at C6-7, and a right anterior iliac crest bone graft."

Defendant placed plaintiff on disability medical leave after this incident. Plaintiff's wife went to the benefits department to renew his leave each month. However, Mrs. Peagler did not inform the defendant-employer's benefit counselor that her husband's injury was work-related.

Plaintiff filed a Notice of Accident on 14 April 1994 for the injury that occurred on 28 April 1993. Deputy Commissioner Mary M. Hoag concluded that the plaintiff sustained a compensable injury on 28 April 1993; that his failure to report his injury in a timely manner was excusable and defendants were not prejudiced by this delay; and that defendants were not entitled to a credit for the disability payments made to the plaintiff. The defendant appealed to the full Commission.

The full Commission affirmed the deputy commissioner's decision and ordered the defendant to pay plaintiff temporary total disability compensation, medical bills related to plaintiff's injury, and attorneys fees. The Industrial Commission's award is based on the following findings of fact:

30. According to Dr. Darden, plaintiff's attempt to close the truck doors on 28 April 1993 could have caused plaintiff's neck, left arm and shoulder injuries. However, plaintiff's disc degeneration at C4-5, C5-6, and C7 was more likely than not normal wear and tear. The aging process causes degenerative disc disease and that trauma can cause it to be symptomatic.

. . . .

PEAGLER v. TYSON FOODS, INC.

[138 N.C. App. 593 (2000)]

37. Plaintiff sustained an injury by way of specific traumatic injury of the work assigned on 28 April 1993. Plaintiff's problems related to his left arm, shoulder and neck, involving the herniation of a cervical disc at C6-7.

. . . .

39. . . . There is no evidence of record that plaintiff is able to perform work of any kind or to earn wages of any kind. Moreover, there is no evidence of record that any job exists for which plaintiff is suited given his educational and physical limitations, age and experience.

Defendant filed a motion for reconsideration on 5 February 1998, which the full Commission denied. Defendant appeals.

On appeal from an award of the Industrial Commission, the scope of our appellate review is limited to two questions: (1) whether the Commission's findings of fact are supported by competent evidence in the record; and (2) whether the findings of fact justify the Commission's conclusions of law. *See Sanders v. Broyhill Furniture Indus.*, 131 N.C. App. 383, 387, 507 S.E.2d 568, 570 (1998), *disc. review denied*, 350 N.C. 99, 528 S.E.2d 367 (1999). This Court does not weigh the evidence; if there is any competent evidence which supports the Commission's findings, we are bound by their findings even though there may be evidence to the contrary. *See Hansel v. Sherman Textiles*, 304 N.C. 44, 283 S.E.2d 101 (1981). Furthermore, it is well established that the Worker's Compensation Act " 'should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation.' " *Hall v. Chevrolet Co.*, 263 N.C. 569, 576, 139 S.E.2d 857, 862 (1965) (citations omitted).

[1] We first consider whether the Industrial Commission erred in concluding that the plaintiff's medical condition and disability is the result of the 28 April 1993 incident. The defendant argues that the Commission erred in affirming the award of compensation because the plaintiff did not establish that his condition was caused by the work-related incident. In order for there to be a compensable claim for workers' compensation, there must be proof of a causal relationship between the injury and the employment. *See Booker v. Medical Center*, 297 N.C. 458, 475, 256 S.E.2d 189, 200 (1979). The injury is compensable if " 'it is fairly traceable to the employment' or 'any reasonable relationship to the employment exists.' " *Rivera v. Trapp*, 135

N.C. App. 296, 301, 519 S.E.2d 777, 780 (1999) (quoting *Shaw v. Smith and Jennings, Inc.*, 130 N.C. App. 442, 445, 503 S.E.2d 113, 116, *disc. review denied*, 349 N.C. 363, 525 S.E.2d 175 (1998)). In evaluating the causation issue, "this Court can do no more than examine the record to determine whether any competent evidence exists to support the Commission's findings as to causation . . . ." *Young v. Hickory Business Furniture*, 137 N.C. App. 51, 55, 527 S.E.2d 344, 348 (2000). "[W]hen conflicting evidence is presented, 'the Commission's finding of causal connection between the accident and the disability is conclusive.' " *Bailey v. Sears Roebuck & Co.*, 131 N.C. App. 649, 655, 508 S.E.2d 831, 835 (1998) (quoting *Anderson v. Lincoln Construction Co.*, 265 N.C. 431, 434, 144 S.E.2d 272, 275 (1965)).

Here, expert medical testimony was required to establish causation. This Court has stated "where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 29, 514 S.E.2d 517, 522 (1999) (quoting *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)). In *Click v. Freight Carriers*, 300 N.C. 164, 265 S.E.2d 389 (1980), the Court determined that expert medical testimony was required to establish causation between a specific trauma and the rupture of the plaintiff's invertebral disc. *Click*, 300 N.C. at 169, 265 S.E.2d at 392. *See also Gillikin v. Burbage*, 263 N.C. 317, 325, 139 S.E.2d 753, 760 (1965).

Here, the plaintiff's doctor, Dr. Darden, testified that he examined the plaintiff on 11 May 1993 and operated on Mr. Peagler's herniated disc on 24 May 1993. On 1 June 1993, Mr. Peagler told Dr. Darden about the work-related incident involving the trailer door. When asked on direct examination whether the incident Mr. Peagler described could have caused Mr. Peagler's disc problems, Dr. Darden testified, "[i]t could have."

However, on cross examination, the following exchange took place:

DEFENDANT'S ATTORNEY: And isn't it true that with a herniated disc . . . this can have any number of causes, can't it?

DOCTOR DARDEN: That's correct.

Q: And you can herniate a disc by bending over to tie your shoe, right?

**PEAGLER v. TYSON FOODS, INC.**

[138 N.C. App. 593 (2000)]

A. That's correct.

Q. Sneezing?

A. Yes.

Q. Even rolling over in bed you can herniate a disc; is that correct?

A. That's theoretically possible.

Q. So, really, from looking at the CAT scan or the MRI, there is no way to tell what the cause of the disc herniation is, is there?

A. No.

Q. And you can't be sure, to a reasonable degree of medical certainty, what caused Mr. Peagler's disc herniation in his neck, can you?

A. That's correct.

. . . .

Q. Now, with this MRI that was done, it says that he has a disc herniation in the lower back. You have no idea what caused that, do you?

A. No.

Defendant argues that the doctor's testimony, viewed as a whole, indicates that his opinion as to the cause of plaintiff's disc injury was based upon mere speculation.

At the outset, we note that the expert testimony need not show that the work incident caused the injury to a "reasonable degree of medical certainty." *Cooke v. P.H. Glatfelter/Ecusta*, 130 N.C. App. 220, 224, 502 S.E.2d 419, 422 (1998). Rather, the competent evidence must provide "some evidence that the accident at least might have or could have produced the particular disability in question." *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 28, 514 S.E.2d 517, 522 (1999) (quoting *Click v. Freight Carriers*, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980)).

This case is analogous to *Buck v. Proctor & Gamble Co.*, 52 N.C. App. 88, 94-95, 278 S.E.2d 268, 272-73 (1981), where the plaintiff's doctor testified that the plaintiff's disc protrusion *could* have been caused by an accident at work. There, the doctor also testified that it

was "equally possible" that "the defect was degenerative in nature." *Id.* at 94, 278 S.E.2d at 272. This Court upheld the award of workers compensation to plaintiff. The Court stated:

> In *Lockwood v. McCaskill*, 262 N.C. 663, 138 S.E.2d 541 (1964), the Supreme Court held that an expert's opinion that a particular cause "could" or "might" have produced the result indicates that the result is capable of proceeding from the particular cause within the realm of reasonable probability. . . . [T]he Court [further] recognized that "[a] result in a particular case may stem from a number of causes." 262 N.C. at 668, 138 S.E.2d at 545. All that is necessary is that expert express an opinion that a *particular* cause was *capable* of producing the injurious result. *Id.*

*Buck v. Proctor & Gamble Co.*, 52 N.C. App. 88, 94-95, 278 S.E.2d 268, 272-73 (1981).

Here, Dr. Darden testified that the 28 April 1993 incident could have produced the plaintiff's disc injury. The doctor also testified that most people, as they age, experience asymptomatic degenerative disc changes. However, the doctor testified that specific trauma could cause the degenerative disc changes to become symptomatic, as here; the trauma experienced by Mr. Peagler on 28 April 1993 could have caused a herniated disc.

This is not a case where the record is devoid of a "scintilla of medical evidence that plaintiff's ruptured disc, might, with reasonable probability, have resulted from the accident." *Gillikin v. Burbage*, 263 N.C. 317, 324, 139 S.E.2d 753, 759 (1965). Rather, Dr. Darden's expert testimony provides evidence that the work-related incident could have produced the particular disability in question. Here, Dr. Darden, like the doctor in *Buck*, did *not* testify that the work-related incident could not have caused the plaintiff's condition.

Moreover, we note that Dr. Darden's testimony is corroborated by other testimony. The plaintiff testified that he had never had any problems with his back or neck before the night of 28 April 1993. He also testified that the onset of pain was simultaneous with the incident. The Industrial Commission found that "[i]mmediately after striking the latch with his hand, plaintiff felt pain and a tingling sensation in his left arm." This case is analogous to *Soles v. Farm Equipment Co.*, 8 N.C. App. 658, 175 S.E.2d 339 (1970), where this Court analyzed the issue of causation and affirmed the award of workers' compensation benefits for the plaintiff's disc injury. There,

PEAGLER v. TYSON FOODS, INC.

[138 N.C. App. 593 (2000)]

the doctor testified that "bending over or lifting objects can cause a disc" injury. *Id.* at 660, 175 S.E.2d at 341. This testimony, combined with the testimony that the onset of pain was simultaneous with the work-related incident, was sufficient to establish causation.

[2] Additionally, defendant argues that the competent evidence did not support the finding that the plaintiff was unable to perform work of any kind. Here, the Industrial Commission found that "there is no evidence of record that any job exists for which plaintiff is suited given his educational and physical limitations, age and experience." Dr. Darden testified that the plaintiff might have been able to return to a sedentary type of employment. However, the evidence also showed that the plaintiff, at the time of the injury, was fifty six years old, educated only through the third grade level, and illiterate. Aside from plaintiff's back and neck problems, he also suffers from diabetes. Defendant employer did not provide plaintiff with any vocational counseling or rehabilitation services. We conclude that the Industrial Commission did not err in concluding that the plaintiff was unable to work. Accordingly, defendant's assignment of error is without merit.

[3] Next, we consider whether the Commission erred by failing to make sufficient findings of fact to resolve all of the material issues raised by the evidence. In particular, the defendant argues that the Commission failed to make sufficient findings regarding the testimony of defendant's witnesses. This testimony included statements by defendant's co-workers that he did not report his work-related injury to them, statements by employees of the benefits department that plaintiff did not ask for workers' compensation benefits or report the work-related injury, and a statement by one co-worker indicating that the plaintiff's wife had said that, at one point, she thought that his injury was caused by his repair work at home.

In a workers' compensation case, the Industrial Commission is the finder of fact. "[I]t is exclusively within the Commission's province to determine the credibility of the witnesses and the evidence and the weight each is to receive." *Lanning v. Fieldcrest-Cannon, Inc.*, 134 N.C. App. 53, 57, 516 S.E.2d 894, 898, *disc. review allowed*, 351 N.C. 106, —— S.E.2d —— (1999). In making these determinations, the Commission may not wholly disregard or ignore the competent evidence before it. *See Harrell v. Stevens & Co.*, 45 N.C. App. 197, 262 S.E.2d 830, *disc. rev. denied*, 300 N.C. 196, 269 S.E.2d 623 (1980).

However, "[t]he Commission is not required . . . to find facts as to all credible evidence. That requirement would place an unreasonable burden on the Commission. Instead the Commission must find those facts which are necessary to support its conclusions of law." *London v. Snak Time Catering, Inc.*, 136 N.C. App. 473, 525 S.E.2d 203, 205 (2000) (citing *Woolard v. N.C. Dept. of Transportation*, 93 N.C. App. 214, 377 S.E.2d 267, *cert. denied*, 325 N.C. 230, 381 S.E.2d 792 (1989)).

Here, there is no showing that the Commission ignored the testimony of defendant's witnesses. In its opinion and award, the Commission indicates that it "reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Mary Hoag . . . ." This record included the testimony of defendant's witnesses. The Commission's findings of fact also indicate that it considered their testimony. The findings of fact show that the Commission realized that the plaintiff did not initially report his work-related injury to his co-workers or to the benefits department. The Industrial Commission found:

> 33. Plaintiff's failure to report his injury to defendant in a timely manner is due to his lack of education, confusion resulting from the initial hospitalization for a possible heart attack, his lack of understanding of the causal relationship between the incident of hitting the truck door latch and the resulting injuries, and his reliance on his wife and Dr. Darden to notify defendant of the work-related injury.

> 34. Plaintiff's [sic] did not inform defendant-employer's benefit counselor of her husband's work-related injury . . . . Mrs. Peagler was experiencing difficulty in getting the company health insurance department to pay plaintiff's medical bills.

> 35. Betsy Maness, defendant-employer's agent, completed all plaintiff's forms for medical leave of absence, but had little experience with and did not understand workers' compensation claims. Ms. Maness never inquired as to whether plaintiff's injury was work-related, and always gave plaintiff and/or his wife the necessary forms for continuation of leave of absence when they appeared on the premises.

Further, the Commission's opinion and award clearly demonstrates that it accepted testimony that the injury was caused by the plaintiff's work-related incident and it thereby rejected the contrary testimony

offered by one witness that the injury may have been caused by his repair work at home. Clearly the Commission considered all of the evidence before it; the Commission was not required to make an express finding that it did so. *See Pittman v. International Paper Co.*, 132 N.C. App. 151, 510 S.E.2d 705, *aff'd per curiam*, 351 N.C. 42, 519 S.E.2d 524 (1999).

**[4]** Next we consider whether the Commission erred in concluding that the plaintiff's failure to give timely written notice of the accident was reasonable, and in concluding that the defendant was not prejudiced by the delay. Here, plaintiff was injured on 28 April 1993. The Form 18 was filed with the Industrial Commission on 14 April 1994. N.C.G.S. 97-22 states that no compensation shall be payable to an injured employee unless written notice is given within thirty days after the occurrence of the accident, "unless reasonable excuse is made to the satisfaction of the Industrial Commission for not giving such notice and the Commission is satisfied that the employer has not been prejudiced thereby." Here, the Commission concluded that the plaintiff was reasonably excused from not giving written notice. The Commission concluded:

> Plaintiff's failure to timely report his injury to defendant is excusable due to his limited education, confusion resulting from the initial hospitalization for a possible heart attack, his lack of understanding of the causal relationship between the incident of hitting the truck door latch and the resulting injuries, and his reliance on his wife and Dr. Darden to notify defendant of the work-related injury.

Additionally, the Commission concluded "[d]efendant was not unduly prejudiced by plaintiff's failure to timely file the Form 18 within thirty days after the injury."

"The question of whether an employee has shown reasonable excuse depends on the reasonableness of his conduct under the circumstances." *Lawton v. County of Durham*, 85 N.C. App. 589, 592, 355 S.E.2d 158, 160 (1987). A reasonable excuse may be established where the employee does not initially know of the nature or probable compensable character of his injury. *See id.* Here, the evidence indicated that the plaintiff did not initially understand the nature or character of his injury. The evidence presented at the hearing indicated that plaintiff had a third grade education and was illiterate. The plaintiff testified that after he hit the truck door latch, he felt pain but he did not know what was wrong. The next day, plaintiff felt severe pain

in his chest and arm. He testified, "my arm and shoulder and chest was hurting so bad I couldn't breathe." Plaintiff saw several doctors who initially thought that he may have suffered a heart attack. The plaintiff and his wife did not associate a possible heart attack with the work-related incident.

Additionally, plaintiff testified that he relied on his wife to communicate with his employer while he was undergoing medical treatment. Further, Mrs. Peagler handled all the paperwork relating to plaintiff's health condition because of her husband's illiteracy. Defendant's benefits employees gave Mrs. Peagler disability forms and never asked her whether her husband had experienced a work-related injury or whether this was a workers' compensation claim. The Commission clearly was satisfied that this evidence established a reasonable excuse.

N.C.G.S. § 97-22 also requires that the Commission be satisfied that the employer has not been prejudiced by the delayed written notification. The burden is on the employer to show prejudice. *See Jones v. Lowe's Companies*, 103 N.C. App. 73, 404 S.E.2d 165 (1991). Even assuming defendant did not know about plaintiff's work injury, defendant presented no evidence that it was prejudiced in any way by plaintiff waiting to file his workers' compensation claim. *See Sanders v. Broyhill Furniture Indus.*, 131 N.C. App. 383, 507 S.E.2d 568 (1998). Since the evidence is sufficient to support the Commission's findings that reasonable excuse for not giving the required written notice was shown, and that the employer was not prejudiced by the failure to give written notice, the findings are conclusive on appeal. *See Key v. Woodcraft, Inc.*, 33 N.C. App. 310, 235 S.E.2d 254 (1977). This assignment of error is overruled.

[5] Finally, we consider whether the Commission erred in concluding that defendant was not entitled to a credit for disability payments to the plaintiff. Under N.C.G.S. § 97-42:

> Payments made by the employer to the injured employee during the period of his disability, or to his dependents, which by the terms of this Article were not due and payable when made, may, subject to the approval of the Commission be deducted from the amount to be paid as compensation.

The rationale behind the statute is to encourage voluntary payments by the employer during the time of the worker's disability. *See Foster v. Western-Electric Co.*, 320 N.C. 113, 357 S.E.2d 670 (1987).

Here, the defendant's benefits employee, Betsy Manness, testified that plaintiff received two thousand five hundred and six dollars in disability compensation. She also testified that the disability compensation plan was entirely funded by the employer. The competent evidence in the record does not indicate that the employee contributed to this disability plan. Accordingly, we conclude that the defendant is entitled to a credit for the disability benefits.

We therefore reverse the Industrial Commission on this issue and remand for entry of an Order which credits the defendants for disability payments made to the plaintiff.

Affirmed in part, reversed in part and remanded.

Judges TIMMONS-GOODSON and HUNTER concur.