***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 *********** STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer on the date of plaintiff's alleged injury by accident.
3. On the date of the alleged injury, November 2, 1998, Travelers was the carrier on the risk.
4. On November 2, 1998, plaintiff suffered an injury by accident when he pulled on a wrench and it broke, hitting him in the chest.
5. On November 2, 1998, plaintiff alleges that he injured his back.
6. Plaintiff last worked for defendant-employer on March 31, 1999.
7. Plaintiff's average weekly wage may be determined by a Form 22, which was submitted by the defendants and stipulated into evidence by the parties.
8. The parties stipulated to submission of medical records from the providers listed below and a packet of medical records, consisting of 136 pages was received as evidence.
Mark Lyerly, M.D.
Stephen St. Clair, M.D.
David Diloreto, M.D.
Don Bivins, M.D.
RoMedical Center
Dennis Hill, M.D.
David Kelly, M.D.
Rowan Regional Medical Center Pain Clinic.
9. The issue before the Commission is whether plaintiff's current condition and temporary total disability since March 31, 1999 is related to his November 2, 1998 injury.
 ***********
Based upon the competent evidence of record, the Full Commission adopts with some modifications the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was 44 years of age. He completed high school. Plaintiff worked for defendant-employer for nineteen years and nine months. Defendant-employer produces various small metal parts. Plaintiff started in the blanking department, where metal materials are fed into a stamping machine, a type of die press. Plaintiff performed his job well setting up machines and worked his way up to a lead man position.
2. Prior to his accident of November 2, 1998, plaintiff had a history of back problems. In the fall of 1997, plaintiff suffered with severe pain in his back and right leg. Plaintiff came under the care of Dr. Mark Lyerly of Rowan Neurosurgical Associates. An MRI showed a large herniated disk at L5-S1. On November 7, 1997, Dr. Lyerly performed a diskectomy on plaintiffs back at L5-S1.
3. The surgery helped relieve plaintiffs right leg pain, but his back pain persisted. At plaintiffs December 9, 1997 visit to Dr. Lyerly, he also complained about right leg pain.
4. In follow-up visits to Dr. Lyerly during 1998, plaintiff continued to complain of severe back and right leg pain. Dr. Lyerly switched his pain medicines to Oxycontin, a long-acting narcotic, due to plaintiffs complaints at his May 19, 1998 visit. During this visit, Dr. Lyerly also advised plaintiff that he could try epidural steroid blocks, and, if the epidurals did not help, consider an interbody fusion or internal morphine pump.
5. At plaintiffs September 24, 1998 appointment, he complained of severe back pain. Plaintiff then told Dr. Lyerly that he was taking a higher dose of Oxycontin than the doctor prescribed. Dr. Lyerly noted that plaintiff needed to reduce his use of the narcotics and prescribed Elavil and Lodine for pain management. Dr. Lyerly wrote plaintiff a note to be excused from work on September 23 and 24, 1998 due to his medical condition.
6. On November 2, 1998, plaintiff was using a boxed-in wrench setting up a machine. Most of the wrenches plaintiff used at this time were 15/16ths wrenches, which are about 14 inches long. Plaintiff testified that he was using a larger wrench on this occasion. As plaintiff pulled on the wrench, it broke and hit him in the chest, causing him to fall backwards into a machine. At the Deputy Commissioner hearing, plaintiff testified that he also felt pain in his back at the time.
7. Plaintiff reported the accident to Dennis Ingold, the general manager, and to the office manager the next day. Plaintiff was referred to the Romedical Center. Defendants admitted this claim was compensable and paid for plaintiff's medical treatment. In that plaintiff missed no time from work, no indemnity compensation was paid.
8. Plaintiff was seen at Romedical Center on November 5, 1998. At that time plaintiff reported two incidents at work, one on October 22, 1998 when he said he hit his back against a press arm and the second on November 2, 1998 when the wrench broke. The evidence does not establish that plaintiff reported the alleged October 22, 1998 accident to his employer. The physician at Romedical noted plaintiffs history of back. surgery and pain treatment, and he was referred back to Dr. Lyerly.
9. When plaintiff saw Dr. Lyerly again on December 15, 1998, he mentioned both of the alleged incidents at work. Although plaintiff complained that his pain was worse, Dr. Lyerly determined that it was essentially the same pain he had been experiencing. Plaintiff continued to take four Oxycontin pills per day, even though Dr. Lyerly had only prescribed three per day. Dr. Lyerly again discussed a morphine pump with plaintiff. However, a psychiatric evaluation would be required before that course of treatment could be pursued.
10. Plaintiff continued working for the defendant-employer, doing his regular job. He missed some days from work in January and February 1999 for other reasons. During late 1998 and early 1999, plaintiff was experiencing other health problems, including cluster headaches and migraines. Plaintiff was under the care of his family physician, Dr. David DiLoreto, who referred him to Dr. Dennis Hill for the headaches.
11. Plaintiff was placed on treatment with Prednisone, a steroid, for his headaches. One of the side effects of steroid treatment can be the aggravation of bipolar disorder, which can lead to behavioral changes.
12. On February 17, 1999, plaintiff was involved in an altercation with a co-worker, which almost developed into a fistfight. Plaintiff went to the other employee and confronted him, precipitating the confrontation and subsequently plaintiff walked off the job. As a consequence, plaintiff was suspended from work for three days. Around this time, plaintiff was taken off the Prednisone, and his mental condition improved.
13. Plaintiff underwent a discogram on December 21, 1998. Dr. Lyerly saw him on January 21, 1999, at which time the discogram results were reviewed. Other than pain from the procedure itself, the discogram produced relatively little pain, with more pain at normal disc levels than at L5-S 1, the site of the prior surgery. Dr. Lyerly determined that an interbody fusion would not help plaintiff. Dr. Lyerly again discussed a morphine pump with plaintiff. As plaintiff left the office, he requested Valium, which Dr. Lyerly declined to prescribe.
14. In April 1999, plaintiff requested that defendant-employer grant him a leave of absence due to his back pain. Plaintiff last worked for defendant-employer on March 31, 1999. The employer's policy allows a medical leave of absence up to 30 days. This leave was granted and was renewed three successive times into August 1999. After that, plaintiff did not renew the leave or return to work. Plaintiff had no further communication with his defendant-employer until sometime in the fall of 2000, when he spoke briefly with Dennis Ingold about his 401k plan.
15. Plaintiff was evaluated on May 13, 1999 by Dr. Don H. Bivins, a neurologist. In reviewing the MRI scan taken in November 1998, Dr. Bivins found nothing significant other than the surgical changes. Dr. Bivins testified that in his opinion, most of plaintiff's back pain was caused by nerve root compression, which existed prior to the 1997 surgery, and SI joint dysfunction, which may have pre-existed the surgery. Although Dr. Bivins testified that plaintiffs accident could have aggravated his pre-existing back condition, this statement was based strictly upon plaintiffs subjective pain complaints. Given plaintiffs overall history and the fact that Dr. Bivins had not seen him before his surgery and/or accident, this opinion is not persuasive.
16. Plaintiff has also been treated by Dr. Keven Speight of Rowan Regional Medical Center, who has prescribed Oxycontin. Dr. Speight assessed plaintiff with post-laminectomy syndrome.
17. Dr. Gary Shannon, who is a specialist in anesthesiology, has treated plaintiff for his intractable back pain. Dr. Shannon did not have any opinion as to whether plaintiff s accident of November 2, 1998 aggravated or worsened his back condition.
18. The greater weight of the evidence establishes plaintiff had a pre-existing back problem. Prior to his compensable accident, he was suffering from back pain so severe that he took excessive pain medication, and his treating physician had recommended implanting a morphine pump. The greater weight of the medical evidence does not show that the accident of November 2, 1998 significantly aggravated plaintiffs back condition. Plaintiffs testimony that his pain increased following the accident is not found credible in that it is not supported by the greater weight of the medical evidence.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On or about November 2, 1998, plaintiff suffered an injury by accident arising out of and in the course of his employment with the defendant-employer. The claim was accepted as compensable for medical treatment only and plaintiff received all workers compensation benefits to which he was entitled for that injury by accident. N.C. Gen. Stat. §§ 97-2(6);-25.
2. Plaintiff has the burden of proving that the injuries he complains of resulted from an accident arising out of and in the course of his employment. Plaintiff has failed to prove that his pre-existing back condition and his ongoing back pain were caused or significantly aggravated by the accident of November 2, 1998. Therefore, any claim for additional benefits must be denied. N.C. Gen. Stat. § 97-2(6); Henryv. Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950); Peagler v. TysonFoods, Inc., 138 N.C. App. 593, 532 S.E.2d 207 (2000).
3. Defendants have shown that plaintiff was not disabled due to his compensable injury at the time he voluntarily left his employment. Plaintiff has not shown that he has been unable to find or obtain other employment due to any work-related disability. N.C. Gen. Stat. § 97-29;Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397
(1996).
4. Plaintiffs claim for any additional benefits, based upon a new accident or aggravation of his pre-existing condition, must be denied under the provisions of the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiffs claim for additional benefits must be and is hereby denied.
2. Each side shall bear its own costs.
This the 7th day of November 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER