***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence affirms the Opinion and Award of the Deputy Commissioner.
 *********** ORDER
For reasons set forth in detail as part of Defendants' Reply to Plaintiff's Motion to Reopen the Record and Objection to Records Submitted and for good cause shown, Plaintiff's Motion to Reopen the Record is DENIED.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and the named employer.
3. The carrier liable on the risk is correctly named.
4. The parties stipulated to an average weekly wage of $670.38 with a compensation rate of $446.94.
 *********** ISSUES TO BE DETERMINED
1. Did Plaintiff enter into an enforceable settlement agreement?
2. Did Plaintiff experience a compensable injury by accident on June 14, 2005?
 *********** FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 26 years old. Plaintiff graduated from high school.
2. Plaintiff worked for Duke Power for five to six years, during which time he obtained several certificates for backup diesel generators. He was laid off from Duke Power on February 21, 2005. Plaintiff began working for Defendant-Employer in April of 2005. He was hired as a mechanic and was responsible for servicing dump trucks, fixing heavy equipment, making service calls and picking up parts. His supervisor was Mr. Mryle Bell who is now deceased. *Page 3 
3. On or about June 14, 2005, Plaintiff was assigned to repair a track hoe. The track hoe is a piece of heavy equipment with an enclosed operator's cabin. The door to the cabin swings out, away from the shovel to the right when viewed facing the track hoe. To the left of the door there is a metal support bar. Plaintiff testified that while exiting the cab his right leg came into contact with the pull bar that is normally utilized to pull up into the cab. Plaintiff testified that the bar was bent towards the door and he punctured the inside of his right ankle on the bar.
4. Plaintiff testified that he finished up his duties and returned to the shop where he saw Mryle Bell, Jimmy McLamb and Lynn McLamb. Plaintiff testified he informed Mr. Bell about his injury and pulled down his sock to show the puncture wound to Jimmy and Len McLamb. According to Plaintiff's testimony, Mr. Bell told him to get it fixed the best way he could but did not direct him to medical treatment or complete an accident report.
5. At the hearing before the Deputy Commissioner, Defendants presented the testimony of four witnesses, Chris Caldwell, Raymond Gross, Donna Long, and Lynn McLamb who disputed plaintiff's version of his injury. Mr. Caldwell and Mr. Gross were co-workers of Plaintiff and Ms. Long is the office manager. Lynn McLamb is a co-owner of Defendant-Employer. The testimony of these four witnesses indicates that Plaintiff never reported an injury to his supervisor, Myrle Belle or to Ms. Long, or Mr. McLamb. Mr. Caldwell and Mr. Gross testified that Plaintiff had complained of an open wound to his ankle from the beginning of his employment in April, 2005 and had related his ankle problem to a prior motorcycle accident.
6. Plaintiff has a complicated medical history, including a serious right ankle injury involving pin and screw placement and venous stasis disease of the right lower extremity. The *Page 4 
right ankle injury occurred in 1996 when Plaintiff was 16 years old and required surgical intervention. The venous stasis disease also preexisted this alleged injury on June 14, 2005.
7. Plaintiff continued to work following the alleged injury. He first sought treatment with Brunswick County Hospital on July 7, 2005. It is noted in the medical records that Plaintiff informed the hospital staff that he injured his leg on a jagged piece of metal at work. The wound was cleaned and he received antibiotics. Plaintiff was instructed to follow up with Dr. Marushack for further treatment.
8. Plaintiff left employment with Defendant-Employer on or about July 21, 2005. Defendant-Employer's witnesses testified that Plaintiff left work indicating he would be right back but never returned. Plaintiff's contrary testimony about his reasons for leaving work is not found to be credible.
9. Plaintiff went to Columbus County Hospital on July 26, 2005. His wound was cleaned and he was prescribed more antibiotics.
10. Plaintiff presented to Dr. Hugh Daniel with Walters Surgical Associates for an examination on July 27, 2005 due to complaints of a right ankle wound. Dr. Daniel diagnosed Plaintiff with a venous stasis ulcer. Dr. Daniel explained that a venous stasis ulcer develops when a person has a venous deficiency, which was documented as being present in Plaintiff's case in January of 2005. Dr. Daniel testified that it is not unusual for a traumatic injury to result in a venous stasis ulcer and that any kind of blunt injury could result in a venous stasis ulcer, but the most common cause of a venous stasis ulcer is existing venous stasis disease and lack of compliance with treatment of venous stasis disease would also contribute to the condition. *Page 5 
11. Plaintiff presented to Chicora Medical Group on May 22, 2006 with continuing problems with the ulcer on his leg. Dr. Langston prescribed medication and instructed plaintiff to follow up.
12. Plaintiff returned to Dr. Langston's office on June 16, 2006. Dr. Langston referred Plaintiff to Dr. Marushack for an orthopaedic evaluation.
13. Prior to the appointment with Dr. Marushack, Plaintiff was examined by Dr. Adolfo DeSandre on June 29, 2006.
14. The greater weight of the evidence establishes that ulcers can develop as a result of chronic venous stasis disease in the absence of trauma. When asked whether he could tell how Plaintiff developed the venous stasis ulcer, Dr. Desandre responded, "No." Dr. Daniel testified that an opinion on causation would be "conjecture."
15. Mediation in this claim was held on January 25, 2006. Plaintiff testified that he did not sign any paperwork while at the mediation but he did agree to settle his claim after the conclusion of the mediation. He testified, however, that he changed his mind about signing the documents after he reviewed them in detail because he was concerned that the agreement did not provide funds for future medical treatment for his leg and the wound on his leg was not healing. There is no evidence of record that the plaintiff signed any mediation documents or any prepared compromise settlement agreement.
16. Based on the greater weight of the evidence Plaintiff has failed to establish that he sustained an injury by accident arising out of and in the course of his employment on June 14, 2005. Plaintiff's testimony on this issue is not found to be credible. Also, Plaintiff has failed to prove a causal connection between his venous stasis ulcer and his alleged injury.
 *********** *Page 6 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence reveals that the plaintiff did not enter into a binding and enforceable settlement agreement.
2. The plaintiff has failed to prove by the greater weight of the medical and other evidence that he sustained a compensable injury by accident arising out of and in the course of his employment on June 14, 2005. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff has failed to prove a causal connection between his venous stasis ulcer and his alleged injury. It is well settled that, "where the exact nature and probable genesis of a particular type of [disease] involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the [disease]."Peagler v. Tyson, Inc., 138 N.C. App. 593, 598, 532 S.E. 2d 207, 210-211
(2000) (other citations omitted) (emphasis added). In cases with a complex medical component, like the present case, lay testimony "is not sufficiently reliable to qualify as competent evidence on issues of medical causation." When expert medical opinion testimony is based merely upon speculation and conjecture, it is not sufficiently reliable to qualify as competent evidence on issues of medical causation.Young v. Hickory Bus. Furniture, 353 N.C. 227, 230, 538 S.E. 2d 912, 915
(2000); Holley v. Acts, Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753
(2003). "[M]ere possibility has never been legally competent to prove causation." Holley, 357 N.C. at 234, 538 S.E.2d at 754; citingYoung, 353 N.C. at 233, 538 S.E.2d at 916. To establish the necessary causal relationship for the injury to be compensable under the Act, the evidence must be such to take the case out of the realm of conjecture and remote possibility. *Page 7 Demery v. Converse, Inc., 138 N.C. App. 243, 248, 530 S.E.2d 871, 875
(2000). Upon review of the physicians' deposition testimony in this case, it is clear that the medical origin of Plaintiff's ulcer is speculative. Despite being provided the assumption of blunt trauma as related by Plaintiff, Dr. Daniel testified that an opinion on causation would be "conjecture." Could or should testimony is insufficient to support causation. Holley v. Acts, Inc., 357 N.C. 228, 233,581 S.E.2d 750 (2003).
 *********** AWARD
1. Plaintiff's claim for Workers' Compensation benefits is hereby denied.
2. Each side shall bear its own cost, except the defendant shall pay an expert witness fee of $400.00 to Dr. Aldolfo DeSandre, $450.00 to Dr. Hugh Daniel and $525.00 to Dr. Michael Marushack.
This the ___ day of January 2008.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ LAURA K. MAVRETIC COMMISSIONER
 S/_____________ BUCK LATTIMORE COMMISSIONER *Page 1