JANELL WYLMA McMICKLE BRYANT, Employee, Plaintiff,
v.
TAYLOR KING FURNITURE, Employer, WAUSAU INSURANCE COMPANIES, Carrier, Defendants.
No. COA07-720
Court of Appeals of North Carolina.
Filed April 1, 2008
This case not for publication
Randy D. Duncan for plaintiff appellant.
Hedrick, Eatman, Gardner, and Kincheloe, L.L.P., by Jennifer L. Gauger and Allen C. Smith, for defendant appellees.
McCULLOUGH, Judge.
Plaintiff, Janell Wylma McMickle Bryant, appeals an Opinion and Award of the North Carolina Industrial Commission ("the Commission"), denying plaintiff's claim for additional workers' compensation benefits pursuant to N.C. Gen. Stat. § 97-57 (2007) for carpal tunnel syndrome and Raynaud's syndrome contracted on and after 1 July 2003, the period of time in which Wausau Insurance Company ("Wausau") was the insurance carrier for Taylor King Furniture (collectively, "defendants"). The evidence before the Commission tended to show that plaintiff, who is now 62 years of age with a sixth grade education, was employed for roughly 18 years by Taylor King Furniture as an upholstery sewer. On 3 October 2002, plaintiff filed a worker's compensation claim for bilateral carpal tunnel syndrome and Raynaud's syndrome due to causes and conditions characteristic of and peculiar to her occupation as an upholstery sewer. At the time that plaintiff filed this claim, Taylor King Furniture was insured by The PMA Insurance Group ("PMA").
In October of 2002, plaintiff began treatment with Dr. Mark McGinnis, a board certified orthopedic hand surgeon. Dr. McGinnis performed a right carpal tunnel release on plaintiff in November of 2002 and a left carpal tunnel release on plaintiff in December of 2002. After these surgeries, plaintiff returned to work at Taylor King Furniture, temporarily working in the company's shipping department before returning to the furniture production line.
Despite these surgeries, plaintiff continued to experience the pain and numbness that is symptomatic of Raynaud's syndrome. In March of 2003, Dr. McGinnis visited the Taylor King Furniture plant to observe plaintiff's work function and opined that plaintiff could resume sewing activities without specific restrictions. Dr. McGinnis noted, however, that plaintiff might have difficulty performing her duties due to the numbness in her fingers, caused by Raynaud's syndrome.
In May of 2003, plaintiff was treated by Dr. Steven Merrill, a board certified family practitioner. Dr. Merrill examined plaintiff and determined that she was experiencing symptoms associated with carpal tunnel syndrome and referred plaintiff to Dr. Anthony DeFranzo, who is board certified in plastic and reconstructive surgery and in general hand surgery. On 5 June 2003, Dr. DeFranzo examined plaintiff and noted the discoloration of her fingers, characteristic of Raynaud's syndrome. On 1 July 2003, Taylor King Furniture switched its insurance policy from PMA to Wausau.
In November of 2003, Dr. DeFranzo characterized plaintiff as being in the 15% category of patients who do not improve after carpal tunnel release surgery. Dr. DeFranzo opined that plaintiff's problems with her median nerve, which had been causing her carpal tunnel syndrome, were significant factors in the development of plaintiff's Raynaud's syndrome. On 1 April 2005 and 23 May 2005, respectively, Dr. DeFranzo performed a sympathectomy on plaintiff's right and left hands. Plaintiff has improved greatly since these procedures.
Plaintiff, Taylor King Furniture, and PMA entered into a Settlement Agreement ("the Agreement"), which was approved by the Commission on 1 April 2005. The Agreement provides that it settles "all matters and things at issue between [plaintiff] and [King Taylor Furniture] for PMA Insurance Group's period of coverage up to July 1, 2003." The Agreement also provides, "[I]t is now the contention of both parties that responsibility for [plaintiff's] continuing hand problems after June 30, 2003 is the responsibility of Wausau Insurance, the carrier beginning July 1, 2003." Wausau was not a party to this settlement.
In its Opinion and Award filed 27 April 2007, the Commission found, in pertinent part, that there had been no aggravation of plaintiff's existing occupational diseases of bilateral carpal tunnel syndrome and Raynaud's syndrome after 1 July 2003. The Commission concluded that PMA was the carrier at risk for plaintiff's occupational diseases and denied plaintiff's claim against defendants.
On appeal, plaintiff contends that the Commission erred by: (1) making insufficient findings of fact under N.C. Gen. Stat. §§ 97-53(13) and 97-57 (2007); (2) making findings of fact that are unsupported by competent evidence of record; and (3) acting under a misapprehension of the law in concluding that plaintiff was "last injuriously exposed" to the occupational hazards that resulted in carpal tunnel syndrome and Raynaud's syndrome during the period of time prior to 1 July 2003.
Appellate review of an Opinion and Award of the Industrial Commission is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." Deese v. Champion Int'l Corp., 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). The Commission is the sole judge of the credibility of the witnesses and of the weight of the evidence. Watkins v. City of Asheville, 99 N.C. App. 302, 392 S.E.2d 754, disc. review denied, 327 N.C. 488, 397 S.E.2d 238 (1990). As long as there is some competent evidence to support the Commission's determination, it is binding on appeal even though the evidence might also support contrary findings. Id.

I. Findings of Fact
Plaintiff contends that the Commission erred in finding that there was no augmentation of plaintiff's bilateral carpal tunnel symptom and Raynaud's syndrome after 1 July 2003. We disagree.
First, we consider whether there is some evidence in the record to support the Commission's findings that plaintiff's Raynaud's syndrome was not augmented by her employment after 1 July 2003, but rather was caused by the carpal tunnel syndrome, which began in October 2002 and never resolved.
Here, there is medical evidence in the record that despite plaintiff's 2002 bilateral carpal tunnel releases, plaintiff's original symptoms which originated during PMA's period of coverage did not improve significantly until 2005 when plaintiff underwent the bilateral sympathectomies. Although there is medical testimony to the contrary, Dr. McGinnis testified that the "small amount of vibration in the table top as the sewing machine runs . . . wouldn't put [plaintiff] at an increased risk to getting [Raynaud's disease]." Moreover, Dr. DeFranzo opined that the primary cause of plaintiff's Raynaud disease was her damaged median nerves associated with the carpal tunnel syndrome that developed in October of 2002. Given the evidence of the continuous nature of plaintiff's symptoms and Dr. McGinnis's testimony about the insignificance of table top vibration after 1 July 2003, we conclude that there is some evidence in the record to support the Commission's finding that there was no aggravation of plaintiff's existing occupational diseases after 1 July 2003.

II. Conclusions of Law
Next, plaintiff argues that the Commission made insufficient findings of fact to support its conclusion that plaintiff was "last injuriously exposed" to the occupational hazards that caused her bilateral carpal tunnel syndrome and Raynaud's syndrome during the period of time prior to 1 July 2003. We disagree.
The Full Commission is not required to find facts as to all credible evidence, just those facts that are necessary to support its conclusions of law. Peagler v. Tyson Foods, Inc., 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000). N.C. Gen. Stat. § 97-57 provides:
In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.
The statutory term "last injuriously exposed" means an exposure which proximately augments the occupational disease to any extent, however slight. Barber v. Babcock & Wilcox Construction Co., 101 N.C. App. 564, 565, 400 S.E.2d 735, 736 (1991).
Here, the Commission made the following relevant findings of fact:
20. . . . There was no evidence presented, medical or otherwise, which establishes that Plaintiff, as of July 1, 2003, or at any time thereafter, suffered a new injury or aggravation of her existing occupational diseases of bilateral carpal tunnel syndrome and Raynaud's disease[.]
* * * *
22. Plaintiff settled her claims for bilateral carpal tunnel syndrome and Raynaud's disease with Defendant-Employer and The PMA Group, the Carrier-Defendant who was on the risk up until June 30, 2003. Plaintiff's current symptoms of bilateral carpal tunnel syndrome and Raynaud's syndrome are a continuation of and causally related to her conditions that she settled by compromise settlement agreement.
Thus, the Commission found as fact that plaintiff's current medical conditions are a continuation of the occupational disease that began during the period of time in which PMA was the insurance carrier at risk. The Commission expressly found that there has been no aggravation of plaintiff's occupational diseases on or after 1 July 2003. These findings are sufficient to support the Commission's conclusion that plaintiff was last injuriously exposed to the hazards of the occupational diseases at issue prior to 1 July 2003. Accordingly, this assignment of error is overruled.
Finally, plaintiff argues that the Commission acted under a misapprehension of the law in determining whether defendants must compensate plaintiff for her ongoing occupational diseases. Specifically, plaintiff contends that the Commission's application of the rule articulated in Heatherly v. Montgomery Components, Inc., 71 N.C. App. 377, 323 S.E.2d 29 (1984), disc. review denied, 313 N.C. 329, 327 S.E.2d 890 (1985), an injury by accident case, was improper as the case before us is an occupational disease case. Although we agree that reference to Heatherly was improper, the Commission's finding that there was no augmentation of plaintiff's occupational diseases after 1 July 2003 supports its conclusion under the proper Barber standard. Therefore, we conclude that this error was not prejudicial.
Accordingly, the Opinion and Award of the Commission is affirmed.
Affirmed.
Judges STEELMAN and GEER concur.
Report per Rule 30(e).