* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. The parties have not shown good grounds to reconsider the evidence and the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above; or the named employer is self-insured.
4. The employee's average weekly wage is $430.77.
5. Plaintiff-employee sustained an injury on or about March 23, 2010, with the exact date to be determined by the Industrial Commission.
6. The injury arose out of and in the course of employment and is compensable.
7. In addition to the Pre-Trial Agreement, at and subsequent to the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Notebook of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), and which included the following:
 i. Industrial Commission Forms;
 ii. Defendants' Answers to Plaintiff's Discovery Request;
 iii. Plaintiff's Time Sheets from Ross Dress-for-Less and;
 iv. Medical Records.
 b. A Thumb-drive "Video" produced by Caterpillar of Incident in Question, which is admitted into the record and marked as Stipulated Exhibit (3).
 * * * * * * * * * * *
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. As of the hearing date before the Deputy Commissioner, Plaintiff was forty-two (42) years of age with his date of birth being June 23, 1968. Plaintiff is a high school graduate, and is twenty-five (25) credits short of obtaining a college degree in business management. Plaintiff also served in the United States Army with the 82nd Airborne Division.
2. Plaintiff's employment history includes working in security, and in manual labor, light industrial jobs. Plaintiff also works for Ross Dress-for-Less, in a loss prevention job.
3. Plaintiff began working for Defendant-Employer, an employment agency that places employees in either manufacturing or logistical support positions. Through Defendant-Employer, Plaintiff was assigned to work at a Caterpillar plant in early February 2010. At that facility, Plaintiff was responsible for what was referred to as "dunnage." Plaintiff's duties in that capacity involved operating a stand-up forklift on which he moved pallets of materials to outside disposal bins or compactors. The outdoor area of the facility included a loading dock that had a ramp that went down to an asphalt parking lot. As part of the regular duties upon arrival, Plaintiff was to inspect the forklift he was to operate with the use of an inspection card.
4. Plaintiff testified before the Deputy Commissioner that on the morning of March 23, 2010, there was no inspection card or clip that holds the inspection card on the forklift to which he was assigned. Nonetheless, Plaintiff performed a visual inspection of the forklift, and reported the absence of the card to his supervisor at Caterpillar. Plaintiff testified that previously, other workers had used forklifts at the Caterpillar plant when there was no inspection card attached since the clips used either did not work properly or would be missing. Plaintiff testified that he told his supervisor, Jay, that there was no inspection sheet. Plaintiff further testified that no inspection card was ever provided.
5. The stand-up forklift upon which Plaintiff worked at Caterpillar was electrically *Page 4 
powered and had what was referred to as a "dead man's pedal" or "dead man's switch" on its floorboard. When that pedal is stepped on, it starts the forklift and disengages the brakes. Conversely, when a worker lifts his/her foot off of the pedal, the brakes are engaged.
6. Plaintiff testified that on the morning of March 23, 2010, he exited the Caterpillar plant on his forklift for the purpose of taking cardboard out of a compactor. To accomplish this task, Plaintiff had to park his forklift and exit it. However, on the day in question, because two other employees and their forklifts were located where he usually parked, Plaintiff backed his forklift onto the ramp where the compactor is positioned. Plaintiff further testified that when he parked his forklift, he turned off the power, and lifted his foot off of the "dead man's pedal," which would normally engage the brakes. However, according to Plaintiff, just after he exited the forklift, it began to roll down the ramp and pick up speed. Plaintiff quickly got back on the forklift, and attempted to engage the "dead man's pedal" in order to start the forklift. However, before the forklift could be started, and due to its increasing speed down the ramp, it struck a pallet containing machinery and trapped Plaintiff's left-foot. The impact was so great that the sole of Plaintiff's steel-toed boot on his left-foot was ripped.
7. Defendants contend that the thumb drive-video provided by Caterpillar contradicts Plaintiff's testimony regarding the incident in question. Defendants assert that the video shows Plaintiff driving the forklift down the ramp, and exiting while it was still moving, resulting in the injury to his left-foot. Defendants do acknowledge that the Caterpillar video of the incident is of poor quality.
8. Following the incident of March 23, 2010, Plaintiff was transported by ambulance to a local emergency room for treatment of his left-foot. Plaintiff was provided a medical "moon" boot, prescribed pain medication and released. *Page 5 
9. Approximately two days later, Plaintiff returned to Defendant-Employer to complete paperwork and incident reports for both Defendant-Employer and Caterpillar. Subsequent to March 23, 2010, Plaintiff has not returned to work for Defendant-Employer, either at the Caterpillar plant or otherwise. However, Plaintiff has continued working in his loss prevention job for Ross Dress-for-Less.
10. On approximately March 29, 2010, Plaintiff spoke by telephone with Mr. Derek Smith, his supervisor with Defendant-Employer. Mr. Smith informed Plaintiff that he had viewed the video provided by Caterpillar, but that in his opinion "there was nothing that was definitive from the video." Mr. Smith also informed Plaintiff that it appeared the forklift was still moving when Plaintiff exited it, and that Caterpillar had decided he could not return to work at their facility for a safety violation of not having the safety checklist. More specifically, Mr. Smith told Plaintiff that he violated the safety rule of not conducting a pre-shift inspection of the forklift, based upon the absence of an inspection card being found on the forklift following the incident.
11. Plaintiff testified that during his orientation at the Caterpillar plant, he and other operators were trained not to exit a forklift until it had come to a complete stop. Plaintiff further testified that regardless of this training, other workers at Caterpillar had exited forklifts while the forklifts were slightly in motion, and that this had occurred in the presence of supervisors.
12. There is no evidence of record upon which to find that any other employees or contract operators at Caterpillar were ever terminated for exiting a forklift in this manner.
13. Plaintiff testified that despite the decision made by Caterpillar regarding his inability to return to work at their facility, it was his understanding that after recovering from his left-foot injury, he would have the opportunity to return to work for Defendant-Employer. *Page 6 
During his recovery period, Plaintiff continued to take medical status notes to Defendant-Employer's office into the autumn of 2010. However, during this same period of time, Defendant-Employer had determined that Plaintiff's employment was not going to continue.
14. Based upon the poor quality thumb drive-video provided by Caterpillar, and the preponderance of the credible evidence of record, the Full Commission finds that there is no evidence of record upon which to find that Plaintiff violated any safety rule on March 23, 2010 upon which to base his termination. However, assuming, arguendo, that Plaintiff did violate a safety rule on that date, there is no evidence of record that contradicts Plaintiff's assertion that other workers at the Caterpillar facility who had operated a forklift without having an inspection card, or who had exited a forklift while it was slightly moving had been terminated.
15. Based upon the preponderance of the credible evidence of record, the Full Commission finds that Plaintiff has not constructively refused suitable employment.
16. Plaintiff continues to have a stress fracture and to walk on crutches as a result of his March 23, 2010 injury by accident. Through the date of the hearing before the Deputy Commissioner, Plaintiff has periodically worn a cast. Based upon the preponderance of the evidence of record, any work Plaintiff could perform during this period of time was limited to light-duty jobs.
17. Prior to working at the Caterpillar plant, Plaintiff was already working for Ross Dress-for-Less, an apparel store. For that employer, Plaintiff's job was primarily security related, but he also did some work as a greeter. Since the beginning of May 2010, Plaintiff returned to work for Ross Dress-for-Less on a limited basis in a light-duty position that allowed him to sit due to his left-foot condition. Later, that accommodation was no longer available, and Plaintiff had to stop working for Ross Dress-for-Less. Thereafter, Plaintiff was able to again *Page 7 
return to work for that employer, but remained on limited duty, performing jobs not involving the walking and standing he was able to perform prior to his March 23, 2010 injury by accident.
18. Plaintiff's left-foot condition and related medical treatment are the direct and natural result of and causally related to his March 23, 2010 injury by accident.
19. Based upon the preponderance of the credible vocational and medical evidence of record, including his work for Ross Dress-for-Less, and as a result of his March 23, 2010 injury by accident, the Full Commission finds that Plaintiff has been capable of earning limited wages during various periods of time.
20. Based upon the preponderance of the evidence of record, the Full Commission finds that Defendants did not defend this matter unreasonably.
 * * * * * * * * * * *
Based on the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On March 23, 2010, Plaintiff sustained an admittedly injury by accident arising out of and in the course of his employment with Defendant-Employer. N.C. Gen. Stat. § 97-2(6).
2. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Peagler v. Tyson Foods,Inc., 138 N.C. App. 593, 532 S.E.2d 207 (2000) (quotingClick v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980)). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); *Page 8 Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
3. Plaintiff's left-foot condition and related medical treatment are the direct and natural result of and causally related to his March 23, 2010 injury by accident. N.C. Gen. Stat. § 97-2(6); Click v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
4. Based upon the preponderance of the credible evidence of record, the Full Commission concludes that Plaintiff has not constructively refused suitable employment. N.C. Gen. Stat. § 97-32.
5. Based upon the preponderance of the credible vocational and medical evidence of record, including his work for Ross Dress-for-Less, and as a result of his March 23, 2010 injury by accident, Plaintiff is entitled to be paid by Defendants temporary partial disability compensation at the rate of two thirds the difference between his average weekly wage at the time of his March 23, 2010 injury of $430.77 and the average weekly wages he earned thereafter while working for Ross Dress-for-Less commencing in May 2010 and continuing through the present until such time as he returns to work at his pre-injury wage level, or further Order of the Commission, but subject to the statutory maximum period of three-hundred (300) weeks. N.C. Gen. Stat. § 97-30.
6. As the result of his March 23, 2010 injury by accident, Plaintiff is entitled to have Defendants pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Because Defendants did not defend this matter unreasonably, Plaintiff is not *Page 9 
entitled to sanctions in the form of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff temporary partial disability compensation at the rate of two thirds the difference between his average weekly wage at the time of his March 23, 2010 injury of $430.77 and the average weekly wages he earned thereafter while working for Ross Dress-for-Less commencing in May 2010 and continuing through the present until such time as he returns to work at his pre-injury wage level, or further Order of the Commission, but subject to the statutory maximum period of three-hundred (300) weeks. From the amounts having accrued, this compensation shall be paid to Plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by Plaintiff as the result of his March 23, 2010 injury by accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraph One of this Award is approved for Plaintiff's counsel and shall be paid by Defendants as follows: twenty-five percent of any compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to Plaintiff's counsel.
4. Defendants shall pay the costs. *Page 10 
This the ___ day of November 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 11