***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 *********** ISSUES TO BE DETERMINED
The only issues appealed to the Full Commission are:
1. Is plaintiff entitled to additional medical treatment under N.C. Gen. Stat. § 97-25.1? *Page 2 
2. Did the Deputy Commissioner err in ordering the plaintiff and defendants to pay sanctions?
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or non-joinder of parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. An employment relationship existed between plaintiff-employee and defendant-employer on 21 November 2003.
5. Plaintiff's average weekly wage is $977.81.
6. At the hearing before the Deputy Commissioner, and supplemented thereafter, the parties submitted a notebook of various stipulated exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), which included the following:
 a. Industrial Commission Forms;
 b. Discovery Responses;
 c. Medical Records and;
 d. Plaintiff's Personnel File.
7. Also made part of the record are the depositions of Dr. Louis Almekinders, Dr. Christopher Brown, Dr. Allan Friedman, Dr. Carol Epling, and Dr. Claude Moorman, III. *Page 3 
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is fifty-five (55) years of age, with his date of birth being 29 November 1954.
2. Plaintiff is a registered nurse and began working for defendant-employer in 1980. Plaintiff has worked continuously as a registered nurse for defendant-employer since that time.
3. On 21 November 2003, plaintiff sustained an admittedly compensable injury by accident to her right shoulder when she slipped on a mat in front of a toilet and fell. Upon falling, plaintiff's right side, arm and shoulder severely impacted the bathroom wall. Plaintiff testified that following this incident, she was unable to move for approximately ten (10) minutes.
4. Defendant admitted the compensability of and its liability for this injury by accident pursuant to an Industrial Commission Form 60, dated 16 August 2005.
5. Following her injury by accident, plaintiff was initially treated at defendant-employer's Employee Occupational Health and Wellness (EOHW) center, at which time she reported experiencing right shoulder and right buttock pain. At that time, plaintiff did not report experiencing neck pain.
6. Plaintiff began treating with Dr. Almekinders on 3 February 2004, with primary complaints of right shoulder pain. There were no complaints of neck pain or symptoms. Dr. Louis Almekinders diagnosed her as having post-traumatic AC joint arthritis with possible osteolysis. For that condition plaintiff was given an injection. *Page 4 
7. During the period of her treatment with Dr. Almekinders, plaintiff intermittently experienced numbness and tingling in the small and ring finger of her right hand. However, plaintiff only first reported these symptoms to Dr. Almekinders on 10 May 2004. Also on that date, diagnostic tests revealed abnormal results for the right index finger, which can be indicative of cervical problems given that the nerve roots exiting the cervical spine innervate the index finger, ring finger and pinky finger of the right hand.
8. Plaintiff last saw Dr. Almekinders on 24 June 2004, at which time she sought a second opinion regarding his recommendation for surgical intervention for her right shoulder.
9. On 15 July 2004, plaintiff was examined by Dr. Claude T. Moorman, III. On that date, plaintiff did not report experiencing neck pain or symptoms to Dr. Moorman. Dr. Moorman ordered a shoulder MRI, which revealed a labral tear and an EMG, the results of which were normal. Dr. Moorman diagnosed plaintiff as having a right shoulder labral tear, possible cubital tunnel syndrome, and possible ulnar neuropathy. On 5 August 2004, Dr. Moorman referred plaintiff to Dr. Marco Rizzo to evaluate her for a possible ulnar nerve compression.
10. Thereafter, Dr. Rizzo examined plaintiff and treated her ulnar neuropathy. With these treatments, plaintiff's symptoms improved. Medical records from prior to plaintiff's treatments with Dr. Rizzo reflect that she experienced periodic problems with dropping things with her right hand. However, the medical records following the treatments contain no such references until early 2008. Along with Dr. Moorman, Dr. Rizzo believed that plaintiff's right finger and right hand symptoms complaints were elbow-related. *Page 5 
11. On 10 August 2005, plaintiff underwent surgery performed by Dr. Moorman that consisted of a labral repair, subacromial decompression, and distal clavicle excision to her right shoulder.
12. Despite her successful right shoulder surgery, plaintiff's right upper extremity symptoms continued. In December 2005, Dr. Moorman diagnosed plaintiff as having severe cervical disc degeneration at C4-C7.
13. In early January 2006, plaintiff returned to defendant-employer's EOHW. Both Dr. Jackson and Dr. Carol Epling at EOHW indicated that plaintiff's cervical symptoms were likely not related to her injury by accident of 21 November 2003. These opinions were based on the fact that there was no reference in the records around the time of her injury to cervical symptoms.
14. In early 2007, plaintiff experienced problems with her left shoulder, including pain and paresthesias in her arm and neck. Plaintiff initially treated with providers at defendant-employer's orthopaedic clinic, but returned to Dr. Moorman on 16 August 2007. Dr. Moorman opined that plaintiff's symptoms were cervical in nature. A cervical MRI on 15 October 2007 revealed degenerative problems at multiple levels.
15. Thereafter, Dr. Moorman referred plaintiff to Dr. Christopher Brown, who first examined her on 18 October 2007. On 29 January 2008, plaintiff returned to Dr. Brown and reported experiencing mild myelopathic symptoms in her feet and her hands. Dr. Brown diagnosed plaintiff as having cervical myelopathy. Plaintiff later underwent additional nerve root injections in May and July 2008. *Page 6 
16. A 15 July 2008 cervical MRI revealed a number of degenerative problems at various levels, but no significant progression since the October 2007 MRI. Plaintiff also underwent a lumbar MRI at that time.
17. On 25 July 2008, Dr. Moorman released plaintiff at maximum medical improvement and assigned a thirteen percent (13%) permanent partial impairment rating to the right upper extremity. Dr. Moorman also testified that it was more likely than not that she will need "ongoing intermittent occasional evaluation and treatment" for her right shoulder.
18. On 4 November 2008, plaintiff was examined by Dr. Allan Friedman, a neurosurgeon, and reported experiencing ongoing cervical symptoms. Following an examination, Dr. Friedman recommended an anterior cervical fusion procedure.
19. Plaintiff also treated with Dr. William Richardson, and he along with Dr. Friedman performed a three-level anterior cervical discectomy and fusion on 5 March 2009 at C3-C6.
20. Due to continued symptoms, on 12 May 2009 plaintiff underwent a posterior cervical fusion at C3-T1 performed by Dr. Richardson and Dr. Dennis Turner.
21. Dr. Epling has opined that there is no causal relationship between plaintiff's 21 November 2003 injury by accident and her cervical symptoms. Dr. Epling based her opinion upon the fact that the medical records do not reflect reports of cervical symptoms until three-years after that incident and her belief that plaintiff's 2004 right finger symptoms were related to cubital tunnel syndrome.
22. Dr. Almekinders has opined that it is unlikely that plaintiff's cervical symptoms related to her degenerative disc disease were causally related to her injury by accident of 21 November 2003 due to the lack of a temporal relationship. *Page 7 
23. Dr. Brown was unable to render a causation opinion given the lack of any reference to radiating pain in Dr. Moorman's medical records. Dr. Brown also noted a lack of temporal relationship between the injury by accident and plaintiff's cervical spine complaints.
24. Dr. Friedman, the neurosurgeon who performed surgery on plaintiff's cervical spine in March 2009, opined that plaintiff's 2004 hand complaints were, more likely than not, related to the brachial plexus. The clumsiness for which Dr. Friedman treated plaintiff was different from numbness of the ulnar aspect of the right hand. Dr. Friedman did not have a good reason to tie the neck with anything that happened in 2003. Dr. Friedman testified that he had a "hard time putting it all together" to establish a causal connection.
25. Dr. Moorman has opined that it is more likely than not that plaintiff's 21 November 2003 injury by accident materially aggravated plaintiff's pre-existing, non-disabling cervical degenerative disc disease. However, Dr. Moorman unequivocally testified that he would give more weight to opinions expressed by Drs. Almekinders, Brown, and Friedman.
26. After weighing all of the expert opinions and testimony, the Full Commission finds that there is insufficient evidence of record upon which to find that plaintiff's cervical spine condition for which she has undergone two surgical procedures was caused or materially aggravated by the 21 November 2003 injury by accident.
27. Any disability or inability plaintiff may have had that was related to her cervical symptoms or cervical surgical procedures is not the result of her 21 November 2003 injury by accident to her right shoulder.
28. On January 6, 2010, Executive Secretary Tracey Weaver approved plaintiff's Form 18M Employee's Application for Additional Medical Compensation pursuant to N.C. Gen. Stat. § 97-25.1, which was signed by plaintiff on October 23, 2009 and by plaintiff's treating *Page 8 
physician on October 5, 2009. The approved Form 18M indicates that plaintiff will require intermittent injections, examinations, and treatment of her right shoulder injury. The Form 18M was not contested by defendants. As such, the issue of future medical treatment for plaintiff's right shoulder injury is no longer an issue before the Full Commission.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 21 November 2003, plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer involving her right shoulder. N.C. Gen. Stat. § 97-2(6).
2. As causation in this case involves "complicated medical questions far removed from the ordinary knowledge and experience of laymen," only an expert is qualified to provide competent opinion evidence on this issue. Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000) (quoting Click v. PilotFreight Carriers, 300 N.C. 164, 265 S.E.2d 389 (1980)).
3. Our courts have repeatedly held that expert medical testimony that is speculation or conjecture is insufficient to prove causation in Workers' Compensation cases. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
4. In this matter, there is insufficient evidence of record upon which to conclude that plaintiff's cervical spine condition for which she has undergone two surgical procedures was caused or materially aggravated by the 21 November 2003 injury by accident. N.C. Gen. Stat. § 97-2(6); *Page 9 Click v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980)); Holly v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
5. Because plaintiff's cervical condition and related surgical procedures are not causally related to her 21 November 2003 right shoulder injury by accident, she is not entitled to further total disability compensation. N.C. Gen. Stat. §§ 97-2(6); 97-29; 97-25;Russell v. Lowe's Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
6. As a result of her admittedly compensable right shoulder injury by accident of 21 November 2003, plaintiff is entitled to have defendant pay to her permanent partial disability compensation at the rate of $652.20 per week for the period of thirty-one and two-sevenths (31 2/7) weeks for her thirteen percent right shoulder rating. N.C. Gen. Stat. § 97-31(13).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $652.20 per week for the period of thirty-one and two-sevenths (31 2/7) weeks for her thirteen percent right shoulder rating. Having accrued, subject to the attorney's fee approved herein, this compensation shall be paid to plaintiff in a lump sum.
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts due plaintiff and paid directly to counsel for plaintiff. *Page 10 
3. The portion of the Deputy Commissioner Houser's 17 September 2009 Opinion and Award in which the Deputy Commissioner orders that plaintiff and defendants pay sanctions in the amount of $250.00 each for the violation of the Deputy Commissioner's post-hearing Order is hereby VACATED.
4. Defendants shall pay the costs.
This the 13th day of April 2010.
 S/___________________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1