***********
Upon review of the competent evidence of record, including the briefs and oral arguments of the parties, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-Trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission, and the North Carolina Industrial Commission has jurisdiction over this matter.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The parties are properly designated, and there is no question as to the joinder or the non-joinder of any party.
4. Insurance coverage existed on the date of injury.
5. Plaintiff alleges to have sustained a compensable injury on July 19, 2007.
6. An employment relationship existed between the parties at all times relevant to these proceedings.
7. Plaintiff's average weekly wage was $405.24 at all times relevant to these proceedings.
8. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One: Pre-Trial Agreement;
 b. Stipulated Exhibit Two: Plaintiff's discovery responses;
 c. Stipulated Exhibit Three: Form 22;
 d. Stipulated Exhibit Four: Plaintiff's medical records and outstanding bills;
 e. Stipulated Exhibit Five: North Carolina Industrial Commission forms and filings.
9. At the hearing, the Deputy Commissioner admitted the following documents into evidence as exhibits: *Page 3 
 a. Plaintiff's Exhibit One: Plaintiff's outstanding medical bills;
 b. Defendants' Exhibit One: "Employee Accident Report" form;
 c. Defendants' Exhibit Two: Plaintiff's personnel file;
 d. Defendants' Exhibit Three: Correspondence dated January 24, 2008 from Defendant-Employer to Plaintiff and Correspondence dated January 30, 2008 from Plaintiff's counsel to Defendant-Employer with attachments.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's back condition is causally related to her July 19, 2007 fall at work?
2. Whether Plaintiff's current hand condition is causally related to her July 19, 2007 fall at work?
3. Whether Plaintiff's hip condition is causally related to her July 19, 2007 fall at work?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years old, with a date of birth of March 28, 1963. Plaintiff has a high school diploma and began working as a hand sander in Defendant-Employer's furniture plant in approximately August 2005. Plaintiff's employment duties as a hand sander generally *Page 4 
consisted of sanding case goods of various sizes, from small pieces weighing approximately 50 pounds to large pieces weighing approximately 200 pounds.
2. The floor in Plaintiff's work area at Defendant-Employer's furniture plant consisted of a concrete floor with a polyurethane coating. At the end of every workday, Defendant-Employer required each hand sander to sweep the wood dust from their work area into the main aisle so that it could be vacuumed up by a large mobile vacuum unit. In order to keep the dust level down, maintenance personnel would often spray a light coating of oil on the floor. The oil made the concrete floor "as slick as ice," and prior to Plaintiff's fall several employees came close to falling on this surface.
3. On July 19, 2007 at approximately 4:45 p.m., maintenance personnel sprayed an oil coating onto the floor around Plaintiff's work area. At approximately 4:50 p.m., Plaintiff, who is five feet, 11 inches tall and weighed approximately 205 pounds at the time, was sweeping her work area when her feet came out from under her, causing her to take a hard fall onto the concrete floor. Although Plaintiff used her left hand to attempt to break her fall, she landed on her left hip and side.
4. Ms. Emma Morrison, Defendant-Employer's personnel manager, became aware that Plaintiff fell and injured her left side on the day of the incident. According to Ms. Morrison, Plaintiff reported injuries to "her left hand, arm, hip, the [sic] side that she fell on." Shortly after the fall, the palm of Plaintiff's left hand became swollen and turned blue, and a knot appeared at the base of her left thumb.
5. Plaintiff's supervisor, Mr. Julius Penley, did not witness the fall, but came over to Plaintiff's work area as she was getting up. Plaintiff described the fall to Mr. Penley, and on July 20, 2007, he filled out an "Employee Accident Report" form. On the "Employee Accident *Page 5 
Report" form, Mr. Penley noted that Ms. Mary Parkhurst witnessed Plaintiff fall while sweeping, and stated that the fall could have been prevented by waiting "until employees in this dept. leave for the day before spraying the floors."
6. On July 20, 2007, Plaintiff had difficulty getting out of bed, could hardly move around after she first got up, and could not raise her left arm over her head. As a result of Plaintiff's complaints, Defendants approved a visit to Mr. William Gerald Vaassen, a physician's assistant, at Burke Occupational Health in Morganton, North Carolina on that same day. Mr. Vaassen's notes indicate that Plaintiff could hardly move around when she first got up, that her primary complaint was arm, shoulder, and hand pain, and that he placed her on light-duty.
7. From July 23, 2007 through July 27, 2007, Plaintiff worked in a light-duty duty capacity for Defendant-Employer. After Plaintiff's return to work at light-duty, her body was still sore and she also experienced some back pain, although the pain in her left shoulder and arm was worse. Plaintiff's testimony about the nature of her pain is found to be credible. On July 27, 2007, Plaintiff returned to Mr. Vaassen with complaints of left shoulder, arm, and wrist pain. Mr. Vaassen continued Plaintiff's light-duty restrictions for another week.
8. On either July 30, 2007 or July 31, 2007, while standing at her kitchen sink, Plaintiff experienced a significant increase in back pain that she described as "a real sharp pain kind of like a knife sticking in my back." According to Plaintiff, this back pain was severe enough that she felt as though she "was going to hit the floor." Plaintiff had difficulty walking to her bed, and could not get up from the bed without assistance. The next day, Plaintiff's husband, who is also an employee of Defendant-Employer, drove her to work to ask about getting a medical visit authorized through workers' compensation. Ms. Morrison informed Plaintiff that *Page 6 
Defendants denied her back claim, and that she would have to use her health insurance and primary care physician for treatment.
9. According to Plaintiff's personnel file, Defendants did not advise Ms. Morrison until August 1, 2007 of their denial of Plaintiff's back claim. Specifically, Defendants advised Ms. Morrison that Plaintiff's back claim "was not related to the injury of 7/19/07." The documents in Plaintiff's personnel file further indicate that Defendants' initial reason for denying the back claim was that Plaintiff would not consent to a recorded statement concerning her July 19, 2007 work injury.
10. On August 1, 2007, Plaintiff began treating with her primary care physician, Dr. Scott Christopher Scoggins, who is a family medicine specialist, due to the denial of her back claim. Plaintiff reported to Dr. Scoggins that she had been experiencing severe back pain for several days. This was the first time that Plaintiff reported back pain to any of her health care providers in connection with her July 19, 2007 work injury. Dr. Scoggins diagnosed Plaintiff with a lumbosacral strain, prescribed medication to help relieve the inflammation, and referred Plaintiff to Dr. Charles E. Suber, a chiropractor.
11. Although Plaintiff underwent eight visits with Dr. Suber, this resulted in little relief of her back pain. Dr. Scoggins ordered magnetic resonance imaging (MRI) of Plaintiff's lumbar spine. On September 13, 2007, Dr. Scoggins noted that Plaintiff's lumbar MRI revealed a left postero-lateral disc bulge/early disc protrusion at the L4-L5 level of the spine with marked left neural foraminal compromise and probable compression of the exiting left L4 nerve root. Dr. Scoggins noted that his physical examination of Plaintiff matched the lumbar MRI findings. Based upon Plaintiff's MRI findings and physical examination, Dr. Scoggins prescribed Prednisone for swelling and Vicodin for pain, and referred Plaintiff to Dr. David Marshall Jones, *Page 7 
a neurosurgeon, for a surgical consultation. Dr. Scoggins noted that Plaintiff "has a legitimate workers compensation claim with regard to left sciatic [sic] after a fall at work." The Full Commission finds that this note is consistent with Dr. Scoggins' deposition testimony in which he opined, to a reasonable degree of medical certainty, that Plaintiff's July 19, 2007 work injury caused the back condition for which he provided treatment. On September 19, 2007, Dr. Scoggins changed Plaintiff's medications and took her out of work pending back surgery.
13. On September 26, 2007, Plaintiff presented to Dr. Jones, who diagnosed her with a left L4-L5 lateral and far lateral herniated nucleus pulposus and degenerative disc collapse at the left L4-L5 level of the spine. He recommended surgery. On October 15, 2007, Plaintiff underwent surgical decompression, discectomy, and fusion procedures performed by Dr. Jones. On October 18, 2007, Dr. Jones discharged Plaintiff from the hospital, and on October 24, 2007, Dr. Jones noted that Plaintiff was doing well post-operatively.
14. Following Plaintiff's back surgery, her radicular leg pain and paresthesias began to improve. By November 2007, Plaintiff was beginning to experience hip pain. Dr. Jones initially felt that the back brace he prescribed for Plaintiff to wear post-operatively was causing the hip pain. However, on February 22, 2008, Dr. Jones noted that Plaintiff's hip pain continued after she stopped using the brace. As a result, Dr. Jones referred Plaintiff to Dr. Edwin Louis Peak, an orthopaedist specializing in hip surgery.
15. In March 2008, Plaintiff presented to Dr. Peak for the first time. Dr. Peak diagnosed Plaintiff with left hip trochanteric bursitis and osteoarthritis and administered a steroid injection. In May 2008, Plaintiff declined to have another steroid injection because Dr. Peak indicated that she could only have four injections per year, and she wanted to wait as long as *Page 8 
possible between injections. Plaintiff did not return to Dr. Peak after the May 2008 visit because she had an unpaid bill that was not being covered by workers' compensation.
16. Following Plaintiff's July 19, 2007 work injury, the initial focus of her medical treatment was on her left hand, wrist, and shoulder. Once Plaintiff's back pain became intolerable, her back complaints became the focus of her medical treatment. However, while Plaintiff was recovering from her back surgery, she began to experience problems with her left hip and subsequently her left hand and thumb.
17. On January 21, 2008, Plaintiff presented to Dr. Roger Rush Hill, a family medicine specialist. Dr. Hill, without the benefit of radiology, initially felt that the knot on Plaintiff's left thumb was a ganglion cyst, and he referred her to Dr. William Davis Lowe, an orthopaedist. On January 22, 2008, Plaintiff saw Dr. Lowe for the first time, diagnosed her with left thumb CMC arthritis and sublaxation of the left thumb metacarpal, and administered a steroid injection to the left thumb CMC joint. Plaintiff testified that she continued to have some pain in her left hand following the steroid injection to her left thumb, but did not return to Dr. Lowe, primarily for financial reasons. Dr. Lowe indicated at his deposition that if Plaintiff continues to have problems with her left thumb, she may need to have surgery to better align the base of the thumb and to eliminate pain.
18. The primary issue herein is whether Plaintiff's back condition, which required surgery, is causally related to her fall at work on July 19, 2007. Mr. Vaassen testified that Plaintiff was a large woman and a fall like the one she sustained on a concrete floor would cause significant force and jarring to her body. He opined that Plaintiff's fall could have certainly caused the problems with her back that developed. Dr. Scoggins was of the opinion that the fall most likely contributed to the disk injury. He was of the opinion that it is not unusual that *Page 9 
Plaintiff's onset of severe back pain occurred 11 or 12 days after the accident, because the onset of pain "doesn't necessarily indicate when the injury happened. It just indicates when the compression on the nerve happened." Dr. Jones was of the opinion that a fall like the one Plaintiff suffered can weaken the disc and make it more susceptible to a rupture and that the fall "was probably some contributing factor to her subsequent disc issue, but it may not have been the major issue all by itself." He further opined that a fall onto a slick concrete floor for a person, like Plaintiff, weighing 200 pounds would cause significantly more force on the spinal column than standing at the sink washing a plastic cup.
19. Defendants contend that Plaintiff's disc herniation, which led to surgery, occurred while she was standing at the sink and is unrelated to her fall. Defendants point to parts of Dr. Jones' testimony to support their contentions. The testimony of Dr. Jones appears contradictory at times. Dr. Jones testified that it "was virtually impossible to say" whether the fall caused a weakness in the wall of the disc, or whether the weakness occurred as a part of a degenerative process. He also opined that a fall like the one Plaintiff suffered can weaken the disc and make it more susceptible to a rupture. In an Industrial Commission Questionnaire Dr. Jones indicated the workplace fall more likely than not combined with other non-work related factors to bring about the current injury, referring to the back injury. At his deposition, he agreed that he was speculating that the fall may have been a contributing factor and that based on the knowledge he had gained, the fall is "more likely not directly related to the need for surgery." He never said, however, that the fall was not related in any way to the need for surgery. In fact, he subsequently testified, "It is my opinion that the fall was not the major factor in her disc herniation. I think it is probably a minor factor, but not a major factor." *Page 10 
20 Dr. Peak opined, "Given the nature of the fall as it's been described to me and documented, it's my opinion that a fall such as this could certainly play a causal role in the development of a back condition as described and also trochanteric bursitis as I treated."
21. Considering the totality of Dr. Jones' opinion testimony, the testimony of Dr. Peak and Physician Assistant Vaassen, and giving great weight to the unequivocal opinion testimony of Dr. Scoggins, the Full Commission finds based on the greater weight of the evidence that Plaintiff's back condition which caused the need for surgery was causally related to her fall at work on July 19, 2007, although not the sole cause.
22. Based upon the opinion testimony of Dr. Peak, which the Full Commission finds as fact, Plaintiff's fall was a significant causal factor in the development of the bursitis for which Dr. Peak treated Plaintiff. Dr. Peak also opined and the Full Commission finds as fact that Plaintiff's development of trochanteric bursitis could have been "secondary to her back surgery and her recovery after that." Dr. Jones felt that the back brace Plaintiff was required to wear following her surgery for an extended period of time contributed to her hip condition.
23. Based upon the opinion testimony of Dr. Lowe, which the Full Commission finds as fact, Plaintiff's fall caused or aggravated her osteoarthritis in her left hand and sublaxation of the thumb CMC joint and also caused, at least partially, damage to the cartilage at the base of her thumb.
24. On April 21, 2008, Plaintiff returned to work for Defendant-Employer in a light-duty capacity, and continued to work in light-duty until she was laid off on January 23, 2009. As a result of her injury, Plaintiff has permanent restrictions of no lifting or carrying more than twenty pounds. Plaintiff's job as a hand sander required that she be able to lift up to 50 pounds occasionally. Although Plaintiff returned to her regular job upon her return to light duty work, *Page 11 
Plaintiff needed assistance from other employees with performing some of the job duties that she previously did without help. She had problems getting down to work and to pick up things from the floor. She had to take more frequent breaks and she worked in pain all the time. Plaintiff's co-worker, Mary Parkhurst, testified that before the accident, Plaintiff was one of Defendant-Employer's best sanders. She had no physical problems before the fall. Ms. Parkhurst testified that after the fall, "Compared to what she was before the fall, it was just like a complete turnaround." She observed that Plaintiff appeared to be in a lot of pain and had to sit down at times after the fall. Several other co-workers also testified that Plaintiff could not perform some of the lifting required by the job that she was previously able to do, that she had difficulty getting down and underneath tables to sand them, that she was not able to do as much as she did before the injury and that she complained about pain in her arms, back, shoulder and legs. The Full Commission finds the testimony of Plaintiff and her co-workers concerning the difficulty Plaintiff had in doing her job after she retuned to light duty work, and that she needed assistance from others in performing job duties that she had previously done alone, to be credible.
25. Since her lay-off, Plaintiff has received unemployment benefits and has looked for work. Despite applying for work at numerous places, including other furniture manufacturers and retail stores, Plaintiff has been unable to find suitable employment within her restrictions. Plaintiff's physical restrictions and pain resulting from her compensable injury, in combination with other vocational factors, have limited her ability to find suitable employment. Plaintiff has been totally disabled since her lay-off.
26. With respect to Plaintiff's disability before she returned to light duty work, Dr. Scoggins took her out of work on September 19, 2007, pending back surgery, and continued to *Page 12 
keep her out of work until on or about April 21, 2008, a period of 31 weeks. Plaintiff also missed nine days during the months of July and August, 2007, as confirmed by her supervisor.
27. Defendants are entitled to a credit offset for the unemployment benefits Plaintiff has received.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On July 19, 2007, Plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with Defendant-Employer to her back, and her left arm, wrist, and hand as a result of a fall onto a concrete floor. N.C. Gen. Stat. § 97-2(6) (2009).
2. Plaintiff's injury from the slip and fall on July 19, 2007 was due to an accident, as it resulted from an unlooked for and untoward event, which was not expected or designed by Plaintiff. The circumstances of Plaintiff's fall also constituted an interruption of her usual work routine and the introduction of unusual conditions likely to result in unexpected consequences. Poe v. Acme Bldrs.,69 N.C.App. 147, 149, 316 S.E.2d 338,340-341 (1984).
3. An injury is compensable under the Workers' Compensation Act if it is fairly traceable to the employment or any reasonable relationship to the employment exists. Rivera v. Trapp,135 N.C. App. 296, 301, 519 S.E.2d 777, 780 (1999). While Plaintiff bears the burden of proof in establishing a causal connection between the work accident and the injury, "expert testimony need not show that the work incident caused the injury to a "reasonable degree of medical certainty." Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 599, 532 S.E.2d 207, 211 (2000)(citing,Cooke v. P.H. Glatfelter/Ecusta,130 N.C. App. 220, 224, 502 S.E.2d 419, 422 (1998)). *Page 13 
Rather, the competent evidence must provide "some evidence that the accident at least might have or could have produced the particular disability in question." Porter v. Fieldcrest Cannon, Inc.,133 N.C. App. 23, 28, 514 S.E.2d 517, 522 (1999) (quoting Click v.Pilot Freight Carriers,300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980). A physician's testimony should be considered as a whole, and may be corroborated by other testimony. Peagler v. Tyson Foods, Inc.,138 N.C. App. 593, 532 S.E.2d 207 (2000).
4. The opinions of Mr. William Gerald Vaassen, Dr. Scott Christopher Scoggins, and Dr. Edwin Louis Peak, and Dr. David Marshall Jones establish by the greater weight of the evidence that Plaintiff's July 19, 2007 work injury either caused or contributed to her back injury which required the surgery performed by Dr. Jones. These opinions satisfy the requirements of Holley v. ACTS, Inc., which set forth the minimum standards required for the admission of medical causation testimony in workers' compensation cases, including the requirement that the testimony be "more likely than not," andYoung v. Hickory Business Furniture, which requires that an expert opinion be based on more than mere speculation and conjecture.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
5. As a direct and natural consequence of Plaintiff's July 19, 2007 work injury to her lower back, Plaintiff developed a hip injury, which is also compensable. Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
6. The greater weight of the evidence establishes that Plaintiff's fall caused or aggravated her osteoarthritis in her left hand and sublaxation of the thumb CMC joint and also caused, at least partially, damage to the cartilage at the base of her thumb. These conditions are *Page 14 
compensable. Any disability Plaintiff may have arising from this condition is also compensable. Brown v. Family DollarDistrib. Ctr., 129 N.C. App 361, 364, 499 S.E.2d 197, 199 (1998).
7. The medical treatment Plaintiff received for her July 19, 2007 work injury to her lower back, hip, and left arm, wrist, and hand has been reasonably required to effect a cure, provide relief, or lessen her disability, and Defendants are obligated to pay for such treatment. As a result of her injury, Plaintiff is likely to need future medical treatment. N.C. Gen. Stat. §§ 97-25; 97-25.1 (2009).
8. To "obtain compensation under the Workers' Compensation Act, the claimant has the burden of proving the existence of his disability and its extent." Hendrix v. Linn-Corriher Corp.,317 N.C. 179, 185, 345 S.E.2d 374, 378 (1986). To support a conclusion of disability, the plaintiff must show that he or she is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment, and that the incapacity to earn is caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982). The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff only needs to provide sufficient proof to *Page 15 
satisfy one prong of the Russell test to support a finding that she is disabled. Workman v. REMC,170 N.C. App. 481, 489, 613 S.E.2d 243, 249 (2005).
9. Plaintiff's July 19, 2007 work injury rendered her medically disabled from any employment from September 19, 2007 through April 21, 2008, the date upon which Dr. David Marshall Jones released her to return to work in a light-duty capacity with permanent work restrictions, as well as for the nine days she missed during the months of July 2007 and August 2007. Thus, Plaintiff satisfied prong one of Russell v. Lowes Prod.Distribution for these time periods. Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
10. Plaintiff worked for Defendant-Employer in a light-duty capacity until her lay-off on January 23, 2009, when she began receiving unemployment compensation and looked for employment. Despite applying for employment at numerous places, including other furniture manufacturers and retail stores, Plaintiff continues to be unable to find suitable employment within the permanent work restrictions issued by Dr. Jones. Plaintiff has established that she has significant physical limitations on her mobility and ability to function as a result of her injury. She has also established that her pain is also a limiting factor. Although she is capable of some work, Plaintiff's physical limitations and pain resulting from her injury and her pre-existing vocational factors would limit her employment opportunities. Plaintiff has been making diligent, yet unsuccessful efforts to secure suitable employment following her January 23, 2009 lay-off. Therefore she remains disabled from any employment, and has satisfied prong two ofRussell.
11. Defendants are entitled to a credit offset against unemployment benefits Plaintiff has received. N.C. Gen. Stat. § 97-42 (2009).
 *********** *Page 16 
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $270.30 per week for the nine days she missed from work due to her July 19, 2007 work injury in July 2007 and August 2007, from September 19, 2007 through April 21, 2008, and from January 23, 2009 and continuing until further order of the North Carolina Industrial Commission. The accrued compensation shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's July 19, 2007 work injury, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
3. A reasonable attorney's fee of 25 percent is hereby approved for Plaintiff's counsel from the sums due Plaintiff herein. Defendants shall deduct and pay directly to Plaintiff's counsel 25 percent of the accrued compensation owed to Plaintiff and every fourth compensation check thereafter.
4. Defendants are allowed a credit offset for the unemployment compensation benefits Plaintiff has received.
5. Defendants shall pay the costs of these proceedings.
This the ___ day of July 2010. *Page 17 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1