***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Commission and this is the Court of proper jurisdiction for this action. *Page 2 
2. All parties are subject to, and bound by, the provisions of the North Carolina Workers' Compensation Act.
3. Defendants accepted as compensable plaintiff's claim for injuries for a low back strain, left cervical strain, and left-arm strain.
4. At all relevant times, an employer-employee relationship existed between plaintiff and defendant-employer.
5. On all relevant dates, Key Risk Insurance Company was the workers' compensation carrier on the risk for defendant-employer.
6. Defendants filed an Industrial Commission Form 19 on October 5, 2006.
7. Plaintiff's average weekly wage on the date of the injury was $441.56.
8. Plaintiff's compensation rate based upon her average weekly wage was $294.39.
9. At the hearing before the Deputy Commissioner, the parties agreed to stipulate that the testimony of plaintiff's sisters would be entirely corroborative of plaintiff's testimony.
10. In addition to the Pre-Trial Agreement which was entered into the record as Stipulated Exhibit (1), the parties submitted the following to the Deputy Commissioner:
 a) A Packet of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), and which included the following:
 i. Industrial Commission Forms;
 ii. Medical Records and;
 iii. Discovery Responses. *Page 3 
11. Also made part of the record are the depositions of Dr. Ann Healy, Dr. Robert Lacin, Dr. Divya Patel, Dr. Kurt Voos, and Mr. Richard Cowan, a Vocational Rehabilitation Specialist.
 *********** EXHIBITS
At the hearing before the Deputy Commissioner, plaintiff submitted the following:
 a. A Job Search Log, which was admitted into the record and marked as Plaintiff's Exhibit (1) and;
 b. An Email from Counsel for Plaintiff to Mr. Richard Cowan dated July 7, 2010, which was admitted into the record and marked as Plaintiff's Exhibit (2).
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Houser's May 3, 2011 Opinion and Award, the Full Commission addresses the following:
 *********** ISSUES
1. To what additional indemnity and medical compensation, if any, is plaintiff entitled?
2. Whether plaintiff's chronic pain, in her extremities and otherwise, is the direct and natural result of and causally related to her September 23, 2006 injury by accident?
3. Whether plaintiff's depression is the direct and natural result of and causally related to her September 23, 2006 injury by accident and related chronic pain? *Page 4 
4. Whether plaintiff's chronic headaches are the direct and natural result of and causally related to her September 23, 2006 injury by accident?
5. Whether plaintiff has been fully compliant with vocational rehabilitation efforts?
 ***********
Based upon the preponderance of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty-seven (37) years of age, with her date of birth being December 22, 1972.
2. Plaintiff was first employed by defendant-employer on June 16, 2006, as a Medical Technician/Certified Nursing Assistant. In that capacity, plaintiff's duties required the ability to lift twenty-five (25) pounds alone, to lift one hundred and twenty-five (125) pounds with a coworker or coworkers, and transfer-lift, turn, and position residents weighing up to one hundred and twenty-five (125) pounds unassisted, or with the assistance of a coworker for residents weighing over one-hundred and twenty-five (125) pounds. Plaintiff's duties also required the ability to lift and carry fifty (50) pounds.
3. On September 23, 2006, plaintiff and a co-worker were pulling an approximately three-hundred (300) pound resident into bed when plaintiff experienced a popping sensation in her left side and down her back. After completing her shift and reporting this incident, plaintiff was directed by defendant-employer to seek medical treatment for her conditions.
4. Defendants admitted the compensability of this incident through the filing of an Industrial Commission Form 60. Specifically, defendants accepted as compensable a low back strain, a left cervical strain, and a left arm strain. *Page 5 
5. Prior to September 23, 2006, plaintiff sustained a back strain in the 1990s, a left arm injury with nerve damage in 1999, and an additional back injury at some point between 2003 and 2006. Also prior to her date of injury, plaintiff had been diagnosed as having, among other conditions: anemia, fibromyalgia, high blood pressure, migraine headaches, and vertigo. In April 2000, plaintiff received treatment at the MERCI Clinic for headaches, tendonitis in her arms, pain and swelling in her feet and legs, and pain in her left lower waist. In May 2000, plaintiff received treatment for a left upper extremity injury. In October 2000, plaintiff reported experiencing shooting pains in her legs as well as stiffness, and ongoing headaches and dizziness. In April 2006, plaintiff returned to the MERCI Clinic for treatment of her fibromyalgia and headaches.
6. Plaintiff testified that she had a history of depression prior to her injury by accident. For her depression, plaintiff received treatment in November 1998, and July 1999. Additionally, in December 2001, plaintiff reported to physicians at the MERCI Clinic that she was experiencing depression as well as back pain.
7. In February 2002, plaintiff was involved in a motor vehicle accident and sustained injuries to her left arm and left leg.
8. On September 24, 2006, plaintiff sought treatment for her injury by accident at the Craven Regional Medical Center, now known as CarolinaEast Medical Center. On that date, plaintiff reported experiencing left arm pain that radiated into her left shoulder, the lateral side of her neck, down into her chest and left side, and across her lower back. At that facility, Dr. Kevin Geer diagnosed plaintiff as having sustained a back strain and a left shoulder strain. Plaintiff was provided medications, and was medically excused from work for two (2) days, to be followed by light-duty work for another two (2) days. Additionally, plaintiff was instructed to seek further treatment if her symptoms did not improve. *Page 6 
9. On September 26, 2006, plaintiff sought treatment at the New Bern Family Practice, and was diagnosed as having sustained a lumbar strain. Additionally, plaintiff was medically excused from work for an additional seven (7) days. On October 3, 2006, in addition to continuing to experience back symptoms, plaintiff reported experiencing pain radiating into her legs, the left more than the right. Also on that date, plaintiff was released to return to sedentary work with the restrictions of no bending, squatting, or climbing.
10. Plaintiff then returned to work for defendant-employer on October 5, 2006, in a light-duty position. Plaintiff continued in that light-duty position until April 25, 2007, when she was instructed by defendant-employer not to return until she was able to work at full-duty.
11. On October 18, 2006, plaintiff underwent a lumbar MRI, the results of which revealed a disc herniation into the right foraminal region with nerve root abutment at L3-L4, a disc protrusion in the left foramen at L4-L5, with L4 nerve root compression, and probable abutment of the L5 nerve root within the thecal sac, as well as an annular bulge with annular fissure at L5-S1.
12. On October 30, 2006, plaintiff sought treatment from Dr. Kurt Voos and reported experiencing neck, left-shoulder, and low back pain. Dr. Voos noted disc herniations at L3-L4 and L4-L5, initially provided conservative treatment with medications and physical therapy, and assigned light-duty work restrictions. Plaintiff then participated in physical therapy for the period of November 8, 2006, through November 22, 2006.
13. On December 4, 2006, plaintiff returned to Dr. Voos and reported experiencing some relief of her symptoms, but also continuing to experience persistent left lower extremity pain for which Dr. Voos recommended epidural steroid injections. *Page 7 
14. On December 29, 2006, reported to Dr. Kirk Harum at Crystal Coast Pain Management, where she received two epidural steroid injections. However, these injections did not resolve plaintiff's symptoms.
15. On February 7, 2007, Dr. Voos continued plaintiff's light-duty work restrictions and noted that she had experienced migraine headaches following the epidural injections.
16. On February 28, 2007, plaintiff underwent an electromyogram, or EMG, to evaluate the pain in her lower extremities, which produced normal results.
17. On April 2, 2007, plaintiff reported continued left shoulder pain to Dr. Voos. At that time, plaintiff did not favor surgery. Plaintiff was then examined by Dr. Hodges, who diagnosed left rotator cuff tendonitis, a diagnosis with which Dr. Voos concurred.
18. Plaintiff was then referred back to, and participated in, physical therapy for the period of July 12, 2007, through August 10, 2007. Additionally, Dr. Voos restricted plaintiff to light-duty work with no use of her left arm.
19. On September 7, 2007, plaintiff underwent a left shoulder MRI, the results of which revealed an intact rotator cuff tendon and biceps tendon, but a possible partial tear of the posterior labrum. Based upon these results, Dr. Voos referred plaintiff for a left shoulder surgical evaluation.
20. On October 8, 2007, plaintiff underwent a left shoulder surgical evaluation with Dr. Christopher Barsanti. Following an examination, Dr. Barsanti opined that plaintiff's left shoulder symptoms were not the result of a labral tear, and did not recommend surgery.
21. On November 7, 2007, plaintiff again returned to Dr. Voos. Given Dr. Barsanti's recommendations, Dr. Voos ordered a cervical MRI, the results of which were within normal *Page 8 
limits. On December 8, 2007, an EMG of the left upper extremity was performed to evaluate plaintiff's complaints of radiating pain into her left hand, which also produced normal results.
22. Due to the results of these diagnostic studies, Dr. Voos opined that cervical spine pathology was not the source of plaintiff's left shoulder and left arm symptoms. Additionally, Dr. Voos assigned restrictions of working in a light-duty position, with no use of the left arm, and no driving more than thirty (30) minutes round trip.
23. On January 10, 2008, plaintiff underwent a lumbar discogram and a CT scan, the results of which produced concordant responses that duplicated her pain at L3-L4 and L4-L5. Dr. Voos then recommended an interbody fusion procedure at L3-S1, and testified that this procedure would improve plaintiff's condition and provide increased functionality. Initial approval for this procedure was classified as pending until a second opinion.
24. On July 1, 2008, plaintiff underwent a second surgical opinion examination by Dr. Robert Lacin, who also reviewed medical records. Thereafter, Dr. Lacin opined that there was no clear evidence of lumbar radiculopathy, and that he did not believe plaintiff's lower extremity pain was related to any radicular symptoms. Additionally, Dr. Lacin recommended that plaintiff not undergo lumbar surgery. In light of Dr. Lacin's opinion, defendant-carrier has not authorized the spinal fusion procedure recommended by Dr. Voos.
25. The evaluation of plaintiff on July 1, 2008, was the only one performed by Dr. Lacin. Additionally, the medical records Dr. Lacin reviewed prior to his evaluation were incomplete, lacking records from New Bern Family Practice from September 26, 2006, that reflect reports by plaintiff of radiating pain in her lower extremities, as well as the lumbar MRI performed on October 18, 2006. *Page 9 
26. Dr. Lacin's opinion to not recommend surgery was based in part on a MSNBC.com web-based report regarding workers' compensation claimants with back injuries, which concluded that their conditions were more likely to worsen with surgery. Dr. Lacin's surgical opinion was also based upon his view that there were no real significant findings in plaintiff's case.
27. Regarding Dr. Lacin's opinions, Dr. Voos testified that MSNBC.com is not a recognized authoritative source in the field of orthopedics, neurosurgery, or back treatment. Dr. Voos further testified that many of his patients have been referred to Dr. Lacin for a second opinion, and that regardless of the patient or their symptoms, Dr. Lacin consistently recommends against surgical intervention.
28. On September 11, 2008, plaintiff was examined by Dr. Robert Martin for a second opinion regarding her left shoulder. Following an examination, Dr. Martin recommended that plaintiff undergo an arthroscopic procedure to determine if there was an existing pathology that had not yet been revealed in a previous diagnostic study.
29. Plaintiff was last examined by Dr. Voos on September 17, 2008, who noted that she had exhausted all non-operative measures and that her ongoing, unresolved symptoms had made her condition miserable. Additionally, Dr. Voos noted that plaintiff was proceeding with surgery for her left shoulder condition.
30. At his deposition, Dr. Voos opined that plaintiff's lower extremity conditions were causally related to her September 23, 2006 injury by accident. Additionally, Dr. Voos continued to recommend that plaintiff undergo a lumbar fusion procedure for her low back and lower extremity conditions. *Page 10 
31. The Full Commission assigns greater weight to the testimony and opinions of Dr. Voos as opposed to those of Dr. Lacin. This finding is based in part upon Dr. Voos having a significant history of treating plaintiff, as opposed to Dr. Lacin, who examined her on only one occasion. This finding is also based largely upon the stated bases of Dr. Lacin's opinions.
32. On October 16, 2008, plaintiff underwent an arthroscopic subacromial decompression of the left shoulder, performed by Dr. Martin. Thereafter, plaintiff was medically excused from all work until March 20, 2009.
33. While recovering from surgery, plaintiff participated in physical therapy and reported little improvement with her left shoulder, as well as ongoing neck pain. Dr. Martin diagnosed plaintiff as having a work-related cervical sprain-strain with continued cervicalgia and muscle spasms leading to radicular left arm pain for which she was prescribed medication.
34. On May 15, 2009, plaintiff was evaluated by Dr. Divya Patel for pain management upon the referral of Dr. Martin. Following an examination, Dr. Patel diagnosed plaintiff as having chronic neck, left shoulder, and low back pain, as well as intermittent bilateral upper and lower extremity parasthesis for which she was prescribed medications.
35. Thereafter, plaintiff underwent an additional cervical and lumbar MRI. The results of plaintiff's lumbar MRI revealed disc bulges at L3-4 and L4-5 and a small disc herniation at L5-S1. Plaintiff's cervical MRI produced normal results.
36. On August 19, 2009, plaintiff underwent a functional capacity evaluation, the results of which placed plaintiff in the light physical demand category. Based upon these results, Dr. Patel assigned plaintiff permanent restrictions of light-duty work with no driving more than thirty (30) miles one-way. Additionally, Dr. Patel opined that plaintiff had reached maximum medical improvement for her cervical and low back conditions, and assigned her permanent partial *Page 11 
disability ratings of two percent (2%) for her back, four percent (4%) for her left lower extremities, and four percent (4%) for her right lower extremities.
37. In addition to providing plaintiff treatment for pain management related to her physical symptoms, Dr. Patel also referred plaintiff to a psychiatrist for depression that he causally related to her chronic pain. This referral was not approved by defendants. The Full Commission finds, based on Dr. Patel's testimony, that plaintiff's depression is causally related to her chronic pain.
38. At the hearing, plaintiff testified that she had been taking anti-depressants for approximately six to seven months prior thereto. According to plaintiff's testimony, which the Full Commission finds to be credible, prior to her admittedly compensable injury by accident, she had been well emotionally, but since has difficulty with her self-esteem. Plaintiff further testified that the only other period she had been treated for depression was approximately fifteen years (15) prior to the hearing.
39. Dr. Patel has opined that plaintiff's September 23, 2006 injury by accident materially aggravated her neck, low back, and lower extremity conditions. Additionally, Dr. Patel testified that aggravation of plaintiff's arm and hand pain with numbness, in this case, can be aggravated by the on-the-job accident.
40. On December 2, 2009, Dr. Martin opined that plaintiff had reached maximum medical improvement with regards to her left shoulder and assigned a twelve (12%) permanent partial disability rating.
41. Thereafter, Mr. Richard Cowan, a vocational counselor, was assigned to plaintiff to assist her with her job search efforts. Mr. Cowan prepared a rehabilitation plan in January 2010, with the initial goal of transitioning plaintiff from *Page 12 
her prior career as a CNA into a new career. Based upon this goal, Mr. Cowan focused on customer service representative, receptionist, and dispatcher positions.
42. Defendants contend that plaintiff failed to pursue a pharmacy technician position and a telecommunication position that were within her physical and geographic limitations as outlined by Dr. Patel. Plaintiff notes that throughout the job search, plaintiff fully participated even applying for numerous jobs on her own. Plaintiff also notes that she was uncomfortable with some of the vocational paths proposed by Mr. Cowan.
43. In July 2010, Mr. Cowan recommended to defendants that plaintiff undergo re-education at Craven Community College as an alternative to an ongoing job search. This recommendation was due in part to the state of the economy overall, and was approved by defendants.
44. Plaintiff is currently enrolled at Craven Community College in their medical office administration program and is scheduled to complete that program in approximately June 2012. During this period of retraining, plaintiff continues to receive ongoing total disability compensation from defendants.
45. Dr. Ann Healy is an expert in the field of internal medicine, and works for both Atlantic Internal Medicine and the MERCI Clinic. Dr. Healy testified that medical notes from the MERCI Clinic reflect that plaintiff had reported experiencing radiating pain in both legs as far back as December 7, 1999. Dr. Healy also noted a history of chronic headaches as far back as April 2000.
46. Based upon the preponderance of the credible evidence of record, plaintiff's cervical and low back conditions are the direct and natural result of and causally related to her September 23, 2006 injury by accident. *Page 13 
47. Based upon the preponderance of the credible evidence of record, plaintiff's chronic pain, including her lower extremities, is the direct and natural result of and causally related to her September 23, 2006 injury by accident.
48. Based upon the preponderance of the credible evidence of record, plaintiff's depression is the direct and natural result of and causally related to her September 23, 2006 injury by accident and related chronic pain.
49. There is insufficient evidence of record upon which to find that plaintiff's upper extremity conditions are the direct and natural result of or causally related to her September 23, 2006 injury by accident.
50. There is insufficient evidence of record upon which to find that plaintiff's chronic headaches are the direct and natural result of or causally related to her September 23, 2006 injury by accident.
51. Based upon the preponderance of the credible evidence of record, plaintiff has been compliant with defendants' vocational rehabilitation efforts.
52. Based upon the preponderance of the credible medical and vocational evidence of record, and as a result of her September 23, 2006 injury by accident and causally related cervical and low back conditions, as well as her chronic pain and depression, plaintiff continues to be unable to earn any wages in her former position with defendant-employer or in any other employment.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 14 
1. On September 23, 2006, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer involving her low back, left cervical area, and her left arm. N.C. Gen. Stat. § 97-2(6).
2. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Peagler v. Tyson Foods,Inc., 138 N.C. App. 593, 532 S.E.2d 207 (2000) (quotingClick v. Pilot Freight Carriers,300 N.C. 164, 265 S.E.2d 389 (1980)). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000). Medical testimony that relies on speculation and conjecture, or unproven facts, is not sufficiently reliable to qualify as competent evidence concerning the nature and cause of the injury. Young v. Hickory Bus.Furn., 353 N.C. 277, 538 S.E.2d 912 (2000); Seay v. Wal-MartStores, Inc., 180 N.C. App. 432, 637 SE2d 299 (2006).
3. Based upon the preponderance of the credible evidence of record, plaintiff's cervical and low back conditions are the direct and natural result of and causally related to her September 23, 2006 injury by accident. N.C. Gen. Stat. § 97-2(6); Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. Hickory Bus.Furn., 353 N.C. 227, 538 S.E.2d 912 (2000); Click v. PilotFreight Carriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980).
4. Based upon the preponderance of the credible evidence of record, plaintiff's chronic pain, including the pain in her lower extremities, is the direct and natural result of and causally related to her September 23, 2006 injury by accident. Id. *Page 15 
5. Based upon the preponderance of the credible evidence of record, plaintiff's depression is the direct and natural result of and causally related to her September 23, 2006 injury by accident and related compensable chronic pain. Id.
6. There is insufficient evidence of record upon which to conclude that plaintiff's upper extremity conditions are the direct and natural result of or causally related to her September 23, 2006 injury by accident. Id.
7. There is insufficient evidence of record upon which to conclude that plaintiff's chronic headaches are the direct and natural result of or causally related to her September 23, 2006 injury by accident.Id.
8. A claimant can prove their disability in one of four ways by production of: (1) medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work or any employment; (2) evidence that he is capable of some work, but has after reasonable effort has been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employments; or (4) evidence that he has obtained other employment at a wage less than that earned prior to the injury.Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
9. Based upon the preponderance of the credible medical and vocational evidence of record, and as the result of her September 23, 2006 injury by accident and causally related cervical and low back conditions, as well as her chronic pain, lower extremity conditions, and depression, plaintiff is entitled to be paid by defendants ongoing total disability compensation at the rate of $294.39 per week until such time as she returns to work or further Order of the *Page 16 
Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod.Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
10. As the result of her September 23, 2006 injury by accident and causally related cervical and low back conditions, as well as her chronic pain, lower extremity conditions, and depression, plaintiff is entitled to have defendants pay for all related medical expenses incurred, or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the lumbar fusion procedure recommended by Dr. Voos, but not including expenses associated with her upper extremity conditions and headaches, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants shall pay to plaintiff ongoing total disability compensation at the rate of $294.39 per week until such time as she returns to work or further Order of the Commission.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of her September 23, 2006 injury by accident and causally related cervical and low back conditions, as well as her chronic pain, lower extremity conditions, and depression, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including the lumbar fusion procedure recommended by Dr. Voos, but not including expenses associated with her upper extremity conditions and headaches, when the medical bills have been approved according to established Industrial Commission procedures. *Page 17 
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be paid to plaintiff's counsel. Defendants shall pay every fourth (4th) compensation payment due plaintiff to plaintiff's counsel as an attorney's fee.
4. Defendants shall pay the costs.
This the 10th day of November, 2011.
 S/_________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/__________________ PAMELA T. YOUNG CHAIR
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1